COMMONWEALTH *vs.* DANA T. DUTEAU
(and eleven companion cases[1]).

Franklin. May 7, 1981. — August 7, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Place of trial, Indictment. *Superior Court. Jury and Jurors. Constitutional Law,* Equal protection of laws, Jury. *County, Courts. Athol.*

Statute 1979, c. 343, had the effect of transferring the town of Athol from Worcester County to Franklin County for the purpose of trials in the Superior Court. [323-325]

Article 13 of the Massachusetts Declaration of Rights does not restrict the power of the Legislature to transfer a town from one county to an adjacent county for the purpose of trials in the Superior Court. [326-327]

No State or Federal constitutional right was abridged by the indictment of three defendants by a grand jury sitting in Franklin County for offenses allegedly committed in the town of Athol after the effective date of St. 1979, c. 343, which transferred that town from Worcester County to Franklin County for the purpose of trials in the Superior Court, notwithstanding the fact that the grand jury was drawn from jury pools that included no residents of Athol. [327-332]

INDICTMENTS found and returned in the Superior Court Department, five on January 9, 1980; four on May 29, 1980; and three on January 5, 1981.

Questions of law were reported to the Appeals Court by *Hayer,* J. The Supreme Judicial Court granted requests for direct review.

*Stephen R. Kaplan,* Assistant District Attorney, for the Commonwealth.

*Thomas T. Merrigan* for Dana T. Duteau (*Donald A. Beaudry,* for William J. Griffith, with him).

---

[1] Of the companion cases, two are against Dana T. Duteau, four are against William J. Griffith, and five are against Allen P. Moody.

LYNCH, J.  Each of the defendants in these cases was in-
dicted in the past nineteen months for various crimes[2] alleg-
edly committed in Athol, a town which is geographically
within Worcester County.  The indictments were all re-
turned by grand juries sitting in neighboring Franklin
County and neither the Franklin County jury pool nor any
pool from which these indicting grand jurors were chosen
contained any residents of Athol.  Before their respective
trials each defendant moved to dismiss the indictments
against him, arguing either that a Franklin County grand
jury had no power to indict for crimes committed in Athol,
or that, if it did have the power to so indict, the exclusion of
residents of Athol from the grand jury pool violated the de-
fendants' rights under Massachusetts statutes, and the Fed-
eral and State Constitutions.[3]  In April, 1981, a judge of the
Superior Court sitting in Franklin County reserved and re-
ported to the Appeals Court (pursuant to Mass. R. Crim.
P. 34, 378 Mass. 905 [1979]) three questions pertaining to
the defendants' motions to dismiss.  We granted their mo-
tions for direct appellate review.

The questions reported are as follows: "(1)  Are these in-
dictments valid under the Declaration of Rights and the
General Laws, notwithstanding that they have been re-
turned by the Franklin Division Grand Jury but arise out of
crimes allegedly committed in Athol in Worcester County
and have been returned by a grand jury drawn from a pool

---

[2] Duteau was accused of rape and abuse of a child under the age of six-
teen (G. L. c. 265, § 23), indecent assault and battery on a child under
the age of fourteen (G. L. c. 265, § 13B), and possession of marihuana
(G. L. c. 94C, § 34).  Griffith was indicted for murder (G. L. c. 265,
§ 1), attempted armed robbery (G. L. c. 274, § 6), unlawfully carrying a
firearm (G. L. c. 269, § 10 [a]), and use of a firearm while committing a
felony (G. L. c. 265, § 18B).  The charges against Moody include three
indictments for indecent assault and battery on a child under the age of
fourteen (G. L. c. 265, § 13B), and two indictments for rape and abuse of
a child under the age of sixteen (G. L. c. 265, § 23).

[3] Duteau's motion to dismiss raised both these issues.  Griffith and
Moody challenged their indictments only on the ground that the grand
juries had illegally excluded residents of Athol.

inclusive of no jurors drawn from Athol or Worcester County? (2) If the answer to the first question is in the affirmative, can these indictments lawfully be tried by a Franklin Division traverse jury drawn from a pool inclusive of no jurors selected from the Town of Athol? (3) Should the Superior Court order the Clerk henceforth to send writs of venire facias to the Town of Athol to provide jurors for future sittings of the Franklin Division of the Superior Court Department of the Trial Court?" We conclude that the indictments are valid, but also that the defendants should be tried by a Franklin County traverse jury drawn from a pool which includes residents of Athol, and that henceforth residents of Athol should be included in the jury pool for all sittings of the Superior Court in Franklin County. Accordingly, we answer questions one and three, "Yes," and question two, "No."

1. *Question one.* The first question, which concerns the validity of the indictments returned against the defendants, raises two issues put forth in the defendants' motions to dismiss. As noted above, the first is whether a grand jury sitting in Franklin County has the power to indict for crimes allegedly committed in Athol. The second is whether that jury, if they do have the power so to indict, is a valid jury under G. L. c. 277, § 3, and the Massachusetts and United States Constitutions, when neither the pool from which the indicting grand jury was drawn nor any other Franklin County grand jury contained any residents of Athol. We shall address these issues in turn.

Massachusetts has generally followed the common law rule that an indictment must be found, and the trial must take place, in the county where the crime occurred. See *Commonwealth* v. *Handren*, 261 Mass. 294, 296-297 (1927); K.B. Smith, Criminal Practice and Procedure § 45, at 28 (1970). Thus in the usual case a grand jury from Franklin County would have no power to indict for crimes occurring in Athol, located in Worcester County. But under the English common law the general rule of county-wide districts applied only if parliament made no contrary

provision; and our Legislature is similarly empowered to amend the general rule, in the absence of some constitutional limitation. See *Commonwealth* v. *Parker*, 2 Pick. 550, 554 (1824). See generally *Commonwealth* v. *Collins*, 268 Pa. 295, 300 (1920).[4]

We think that St. 1979, c. 343[5] (amending G. L. c. 218) is such a contrary legislative provision. We conclude that it transfers Athol from Worcester County to Franklin County for the trial of civil and criminal cases in the Superior Court, and thus authorizes a Franklin County grand jury to indict for crimes committed in Athol. Sections 1 and 2 of that statute moved the town of Athol from the jurisdiction of the First District Court of Northern Worcester to that of the District Court of Eastern Franklin; § 3 provided that "[f]or the purposes of all civil and criminal matters related thereto, the town of Athol shall be considered to be within the jurisdiction of the county of Franklin." The amendment does appear in c. 218 of the General Laws, the chapter pertaining to District Courts. See G. L. c. 218, § 1. General Laws c. 212, which deals with the Superior

---

[4] Although we specifically discuss in this section only questions related to the power of a Franklin County grand jury to indict for crimes committed in Athol, the identical issues arise and conclusions apply as well to the question whether a Franklin County trial jury has the power to hear those same cases.

[5] "SECTION 1. Section 1 of chapter 218 of the General Laws is hereby amended by striking out the second paragraph under the caption "Franklin," as appearing in the Tercentenary Edition, and inserting in place thereof the following paragraph:—

"The district court of eastern Franklin, held at Orange; Athol, Orange, Erving, Warwick, Wendell and New Salem. Said court shall be held in Athol at least one day each week of the year.

"SECTION 2. Said section 1 of said chapter 218 is hereby further amended by striking out the second paragraph under the caption "Worcester", as amended by section 1 of chapter 446 of the acts of 1972, and inserting in place thereof the following paragraph:—

"The first district court of northern Worcester, held at Gardner: Gardner, Petersham, Phillipston, Royalston, Templeton, Hubbardston and Westminster.

"SECTION 3. For the purposes of all civil and criminal matters related thereto, the town of Athol shall be considered to be within the jurisdiction of the county of Franklin."

Court has not been amended. Yet each county of the Superior Court is divided into the various territorial districts of the District Court. Hence, it is conceivable that the Legislature thought that a change in the District Court to which Athol was assigned was sufficient to alter as well that town's Superior Court assignment. Moreover, the statement in § 3 of St. 1979, c. 343, is a broad one; since the "thereto" apparently refers to Athol, the statement seems to alter more than just Athol's District Court placement. Most importantly, by St. 1980, c. 231, § 1 (amending G. L. c. 12, § 13), the Legislature transferred responsibility for the prosecution of crimes occurring in Athol from the district attorney for the middle district, made up of Worcester County, to the district attorney for the northwestern district, made up of Franklin and Hampshire counties.[6] If St. 1979, c. 343, had only the narrow goal of moving Athol from the jurisdiction of one District Court to another, the result, in combination with St. 1980, c. 231, would be the very peculiar situation of the district attorney from the northwestern district handling all criminal cases out of Athol, conducting any probable cause hearings for these cases in the District Court for Northern Franklin, but traveling to the Superior Court in Worcester County for indictment and trial of the same cases. Jury of six appeals would apparently move to Franklin County even under the narrow interpretation of the statute, thus adding to the anomaly.[7] We conclude, therefore, that St. 1979, c. 343, must have also had the broader purpose of including Athol within Franklin County for the purpose relevant here, the prosecution of criminal cases in the Superior Court.[8]

---

[6] Section 2 of St. 1980, c. 231, provided: "For the purpose of electing a district attorney and administering election laws relating thereto, the town of Athol shall be considered to be within the jurisdiction of Franklin county for the state election in the year nineteen hundred and eighty-two and every election thereafter."

[7] See G. L. c. 218, § 27A.

[8] For the purposes of this case we need only decide the effect of St. 1979, c. 343, on the Superior Court criminal cases. But we admit that the amendment draws no distinction between civil and criminal cases; it

As to whether any State constitutional provision limits in any way significant here the power of the Legislature to redraw a grand (or trial) jury district, art. 13 of the Declaration of Rights of the Constitution of the Commonwealth does provide that "[i]n criminal prosecutions, the verifica-

---

would seem, therefore, that St. 1979, c. 343, implies as well the transfer of Athol to Franklin County for the litigation of civil cases in the Superior and Probate Courts. (If some of these cases were mistakenly instituted in the wrong county, this problem of improper venue can be easily corrected. See G. L. c. 215, § 8A, as amended by St. 1975, c. 400, § 56; G. L. c. 223, § 15.) We point out, however, that the amendment seems only to transfer Athol to Franklin County for the litigation of criminal and civil cases. Other transactions involving Athol where county designation is important, for example the recording of instruments relating to the title to land, would not be affected. We are left with a number of problems for which no ready solutions are found within the language of the statute and which cry out for legislative clarification. For example, does jurisdiction for divorce lie in Worcester or Franklin County? If the statute is read as applying only to matters cognizable in the Superior Court, the result would be a different county of jurisdiction for divorce and equity matters depending upon whether the action is commenced in the Probate or Superior Courts. If the legislative intent was to transfer all litigation arising in Athol to Franklin County, it would become necessary to probate estates of Athol residents in Worcester County, but somehow litigate contested wills in Franklin County. Under any interpretation of the statute, it is conceivable that wills of Athol decedents would still be probated in Worcester County, since it is not clear that the probate of a will is a civil matter. See *Brady* v. *Doherty*, 253 Mass. 518, 524 (1925). As we have indicated, we are sure that the Legislature did not intend to transfer Athol to Franklin County for all purposes, since to do so would mean that Athol-based estate transactions would be recorded in Worcester County up to 1979 and in Franklin County after the effective date of the statute. Such an unwieldy system imposed without wide notice would undoubtedly produce confusion among the public and the Bar and produce myriad questions regarding the efficacy of instruments recorded in good faith, as well as unduly burdening those seeking to check title to land.

There is no problem here with indictments charging crimes occurring before the effective date of St. 1979, c. 343. The dates alleged in Duteau's indictments are "on or about" October 12 and 16, 1980, and in Griffith's, March 29, 1980. Although some of the dates alleged in Moody's indictments are prior to St. 1979, c. 343, these dates all pertain to continuing offenses, all of which did not conclude until after the amendment's effective date. For a discussion of some of the issues which might arise if the indictments charged otherwise, compare *Zicarelli* v. *Dietz*, 633 F.2d 312, 320-326 (3d Cir. 1980), with *id.* at 326-329 (Gibbons, J., dissenting), cert. denied, 449 U.S. 1083 (1981).

tion of facts in the vicinity where they happen, is one of the greatest securities of the life, liberty, and property of the citizen." But in *Commonwealth* v. *Parker,* supra at 552-556, the court gave art. 13 a very nonrestrictive reading, noting that "the word 'vicinity' [as used in art. 13] is not technical, with a precise legal meaning, as the word 'county,'" and that art. 13 was "merely declaratory of the sense of the people, that the proof of facts in criminal prosecutions should be in the vicinity or neighborhood where they happen" *id.* at 552; and it concluded therefore that art. 13 was probably not designed to restrain the power of the Legislature. Even if there were some limitation derived from art. 13 on the redrawing of grand jury districts by the Legislature, it does not come into play here when the change involves a town abutting the other county. See *Opinion of the Justices,* 372 Mass. 883, 896-898 (1977) (legislative proposal authorizing Chief Justice of the Supreme Judicial Court to transfer trial of criminal cases from one county to an adjoining county does not violate art. 13, citing *Parker*). Likewise no provision of the Federal Constitution seems to limit, in ways relevant to this case, the power of the Legislature to alter the boundaries of a grand jury's jurisdiction.[9] We conclude, therefore, that the grand jury for the Superior Court in Franklin County has the power to indict for crimes allegedly occurring in Athol.

We turn to the defendants' claim that the fact that neither the indicting grand jury nor any other Franklin grand jury was drawn from jury pools that contained any residents of Athol violated the defendants' rights under G. L. c. 277, § 3. That section provides that "[g]rand jurors shall be drawn, summoned and returned in the same manner as traverse jurors," thus applying for grand juries

---

[9] A general due process objection to the alteration made by St. 1979, c. 343, hardly seems tenable. And the Sixth Amendment requirement that a trial jury be "of the State and district wherein the crime shall have been committed," even if applicable to the States (see discussion *infra*), does not seem to limit legislative power to redraw, as here, trial districts within a State.

the selection rules for traverse juries; and G. L. c. 234, § 10, dealing with the selection of traverse juries, directs that such jurors should be summoned from the cities and towns within a county in proportion "as nearly as may be" to the cities' and towns' respective populations. Given our conclusion that St. 1979, c. 343, transferred Athol to Franklin County for the purpose of the prosecution of Superior Court criminal cases, the defendants quite correctly assert that the grand juries which indicted them were selected in a manner contrary to these statutory guidelines. But, as pointed out in *Commonwealth* v. *Best*, 180 Mass. 492, 493 (1902), the point of this apportionment provision is merely to equalize among county residents the duty of serving as jurors and not to give a defendant a basis for challenging an indictment, unless he can show at least some prejudice. The defendants here have not attempted such a showing.[10]  Thus, although we shall order future compliance with the apportionment requirements by the clerk of courts of Franklin County, see *infra*, we decline to dismiss these indictments on the ground of noncompliance with G. L. c. 277, § 3.

We consider finally the defendants' claim that the exclusion of all residents of Athol from the grand jury violated the defendants' rights under the State and Federal Constitutions. The basis in the Federal Constitution for challenging the composition of a State grand jury is found in the equal protection clause of the Fourteenth Amendment. See *Commonwealth* v. *Bastarache*, 382 Mass. 86, 96-97 (1980). The defendant "must show that the procedure employed [to select the grand jury] resulted in a substantial underrepresentation of his race or of an identifiable group to which he belongs." *Id.* at 96[11] quoting from *Castaneda* v. *Partida*,

---

[10] This is not surprising since, given the nature and function of grand juries, see *Brunson* v. *Commonwealth*, 369 Mass. 106, 120 (1975), we doubt the defendants could seriously claim that the decision to indict them would have been different had residents of Athol been included in their grand jury pools.

[11] *Commonwealth* v. *Bastarache*, 382 Mass. 86, 96 (1980), sets out specifically the showing a defendant must make: "The first step is to

430 U.S. 482, 494 (1977). The defendants here cannot sustain this burden. The focus of a Federal constitutional challenge to the composition of a grand jury is on those groups whose exclusion traditionally prompts heightened equal protection scrutiny — groups based on sex, race, color, religion, or national origin. See *Commonwealth* v. *Bastarache, supra* at 97. But the defendants make no claim that the exclusion of residents of Athol from their grand juries resulted in the underrepresentation of any of these traditional equal protection groups. Surely just the group denominated "residents of Athol" does not constitute such an "identifiable" group. Indeed Federal constitutional claims based on the exclusion of geographical groups from trial juries have repeatedly been rejected on the basis that the groups are not sufficiently distinct. See, e.g., *Zicarelli* v. *Dietz*, 633 F.2d 312, 316-320 (3d Cir. 1980), cert. denied, 449 U.S. 1083 (1981); *United States* v. *Foxworth*, 599 F.2d 1, 3-4 (1st Cir. 1979); *United States* v. *Test*, 550 F.2d 577, 581 n.4 (10th Cir. 1976); *United States* v. *Butera*, 420 F.2d 564, 571-572 (1st Cir. 1970); *People* v. *Taylor*, 39 N.Y.2d 649, 655-656 (1976). Those challenges, based on the Sixth Amendment requirement (as applied to the States through the Fourteenth Amendment) that trial juries be "drawn from a source fairly representative of the community," *Taylor* v. *Louisiana*, 419 U.S. 522, 538 (1975), focus not only on the exclusion of "identifiable" equal protection classes but also on the exclusion of other significant groups in the community. See *Commonwealth* v. *Bastarache, supra* at 96.[12] If geographical groups are not distinct

---

establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied" (quoting from *Castaneda* v. *Partida*, 430 U.S. 482, 494 [1977]). "Next, there must be a demonstration of disproportionate underrepresentation over a significant period of time. Finally, if the selection procedure is susceptible of abuse or is not racially neutral, the statistical showing supports the presumption of discrimination. *Id.* On such a showing, the burden shifts to the State to rebut the inference of intentional discrimination. *Id.* at 495, 497-498" (footnote omitted).

[12] *Commonwealth* v. *Bastarache, supra* at 96-97, sets out precisely what a defendant asserting a fair cross section claim must show: "A prima

enough for those broader Sixth Amendment challenges,
surely they are also insufficiently distinct as a basis for the
Federal equal protection challenge here. Nor do the de-
fendants have a valid claim concerning the composition of
their grand juries under art. 12 of the Massachusetts Decla-
ration of Rights. In *Commonwealth* v. *Bastarache, supra*
at 102, we noted that we would view "differently" under
art. 12 "a substantial, identified exclusion of any distinct,
qualified segment of society from jury lists, whether or not
the exclusion was intentional." But in discussing "distinct"
groups (in terms of constitutional requirements) we men-
tioned specifically only those groupings set out in art. 1 of
the Declaration of Rights, as amended by art. 106 ("sex,
race, color, creed or national origin"). See *Commonwealth*
v. *Bastarache*, supra at 101-102. Under art. 12 as well,
therefore, the classification "residents of Athol" is insuffi-
ciently distinct for a successful constitutional challenge to
the composition of the defendants' grand juries.

Apart from any claim based on equal protection or fair
cross section guaranties the defendants could also argue that
they have a right to have residents of Athol included in their
jury pools simply because the crimes charged allegedly oc-
curred in Athol. The claim would be, in other words, that
the common law notion of "vicinage," i.e., the right to a
jury drawn from the neighborhood where the crime oc-
curred, see Blume, The Place of Trial of Criminal Cases:
Constitutional Vicinage and Venue, 43 Mich. L. Rev. 59,
60 (1944), was somewhere incorporated into the State or

prima facie violation . . . is made out by showing that (1) the group
allegedly discriminated against is a 'distinctive' group in the community,
(2) that the group is not fairly and reasonably represented in the venires in
relation to its proportion of the community, and (3) that underrepresenta-
tion is due to systematic exclusion of the group in the jury selection process
[citing *Duren* v. *Missouri*, 439 U.S. 357, 364 (1979)]. Once such a prima
facie case is demonstrated, the State may justify it by a showing that one
or more significant State interests will 'be manifestly and primarily ad-
vanced by those aspects of the jury-selection process, such as exemption
criteria, that result in the disproportionate exclusion of a distinctive
group.' *Id.* at 367-368."

Federal Constitutions. We reject this contention. Article 13 does not include any strict vicinage requirement, see *Commonwealth* v. *Parker*, 2 Pick. 550, 552-556 (1824), and we have already delineated the requirements that art. 12 places on the composition of grand (and trial) juries. As far as the Federal Constitution is concerned, we can find no vicinage requirement for State grand juries. There is, for trial juries, the Sixth Amendment requirement that those juries be "of the State and district wherein the crime shall have been committed." The provision has never been held to apply to the States, and might not even be relevant to State prosecutions since it is generally agreed that the word "district" therein refers to the Federal judicial districts created by Congress. See *Williams* v. *Florida*, 399 U.S. 78, 96 (1970); *People* v. *Taylor*, 39 N.Y.2d 649, 653-654 (1976); Blume, *supra* at 66. But see *People* v. *Jones*, 9 Cal. 3d 546, 551, 554, 556 (1973) ("district" in the Sixth Amendment includes any judicial district drawn by a State Legislature). But even assuming that the State-and-district requirement could be and was made applicable to the States, the better view is that it does not require trial jury pools to include residents of the precise community (in the sense of town or city or other significant geographic area) where the crime occurred. See *Zicarelli* v. *Gray*, 543 F.2d 466, 475-482 (3d Cir. 1976); *People* v. *Taylor, supra* at 655-656. (For a general discussion of the history of the provision, see *Williams* v. *Florida, supra* at 86-97.) Indeed where the Federal districts have been divided into divisions, many courts have found no Sixth Amendment infirmity in the trial of a defendant before jurors drawn from a division other than the one in which the crime allegedly occurred. See, e.g., *United States* v. *Young*, 618 F.2d 1281, 1288 (8th Cir.), cert. denied, 449 U.S. 844 (1980); *United States* v. *Mase*, 556 F.2d 671, 675 (2d Cir. 1977), cert. denied, 435 U.S. 916 (1978); *United States* v. *Florence*, 456 F.2d 46, 50 (4th Cir. 1972); *Franklin* v. *United States*, 384 F.2d 377, 378 (5th Cir. 1967), cert. denied, 390 U.S. 954 (1968). This Sixth Amendment point is irrelevant here in any event since we

shall order the inclusion of residents of Athol in the defendants' trial jury pools on a nonconstitutional basis. See *infra.*

*Questions two and three.* Although our conclusion to question one is that the defendants have no statutory or constitutional claim warranting dismissal of the indictments against them, the issues posed in questions two and three involve the composition of juries not yet chosen — the defendants' trial juries and other future grand and trial juries in Franklin County. In view of this fact we see no reason why the pool from which all future juries in Franklin County are chosen should not include residents of Athol, in compliance with the apportionment directive of G. L. c. 234, § 10. This result seems called for by the statute; and, in any event, we mandate it as well under our general supervisory constitutional and statutory power (G. L. c. 211, § 3) over the composition of jury lists. See *Commonwealth* v. *Bastarache, supra* at 102.

Questions one and three reported by the Superior Court judge in these cases are answered, "Yes." Question two is answered, "No." We remand these cases for proceedings consistent with this opinion.

*So ordered.*