Nancy Ann **BOUSHEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–90–172–CR.

Court of Appeals of Texas, Corpus Christi.

Dec. 6, 1990.

Rehearing Overruled Jan. 3, 1991.

Discretionary Review Refused May 15, 1991.

Clifford L. Zarsky, Corpus Christi, Walter M. Weber, New Hope, Ky., and Charles E. Rice, Notre Dame Law School, Notre Dame, for appellant.

Carlos Valdez, County Atty., Nanette Hasette, Asst. County Atty., Corpus Christi, for the State.

Before NYE, C.J., and SEERDEN and KEYS, JJ.

## OPINION

NYE, Chief Justice.

A trial court found appellant, Nancy Ann Boushey, guilty of obstructing a passageway and assessed a $50.00 fine. By six points of error, appellant complains that the trial court erred in finding her guilty because the evidence establishes the defenses of necessity, protection of life or health, the defense of third person, and the defense of persons entitled to protection under the Fifth and Fourteenth Amendments. Appellant also complains that the trial court denied her constitutional rights of speech and expressive speech, and that it failed to admit evidence. We have carefully considered all of appellant's points of error and affirm the trial court's judgment.

The State's evidence shows that on November 11, 1989, pro-life demonstrators blocked the entrances to the "Abortion Agency–Reproductive Services" clinic in Corpus Christi, Texas. This clinic is in the business of performing abortions. Officer Byrd advised all of the demonstrators that they had obstructed the clinic's public passageway, preventing an employee from entering the clinic. Byrd warned them that they would be arrested if the passageway was not cleared within one minute. Appellant did not clear the passageway and was arrested.

Appellant testified that she sat down on a sidewalk leading to the abortion clinic. Her intent was to delay people from entering the clinic, save the lives of the unborn, help women consider alternatives to abortion, and show her objections to legalized abortions. The day of her arrest she saw about eight pregnant women enter the abortion clinic. She knew that abortions were going to be performed there on that day. She testified that she knew the methods of abortion procedures. The only force she used was sitting, praying and singing.

150

Appellant does not challenge the sufficiency of the evidence to support her conviction, only the law. By points one, three and five, she contends that the evidence establishes the defenses of necessity, protection of life or health, defense of third person, and the defense of persons entitled to protection under the Fifth and Fourteenth Amendments. Appellant supports her contentions concerning these defenses on the purported invalidity of *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). This is the United States Supreme Court decision concerning the privacy of a woman's decision on whether to abort her unborn child. This court must reject appellant's challenge to *Roe v. Wade*. Texas intermediate appellate courts are *stare decisis* courts. The justices of these courts are bound by their oaths to uphold the constitution and the law of the United States and the State of Texas as it exists. It is not their purpose to make law, but to uphold and interpret the law as made. Law-making functions lie in the hands of our Legislature and Congress and the Supreme Court of the United States and Texas. *Roe* is still the law and has not, as yet, been overruled or modified to the extent that it would support appellant's position.

■ § 9.33 of the Texas Penal Code—Defense of Third Person—states that:

A person is justified in using force or deadly force against another to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 of this code in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person.

In the instant case, appellant testified that she sat on the abortion clinic's sidewalk in order to save the lives of the unborn. § 9.33 provides for the defense of a "person." No Texas court has held that

the defense of "third person defense" includes the defense of the unborn. The word "person" as interpreted by the United States Supreme Court in the Fourteenth Amendment does not include the unborn. *Roe v. Wade*, 410 U.S. at 158, 93 S.Ct. at 729. Similarly, § 1.07(a)(27) of the Texas Penal Code defines a "person" as "an individual, corporation, or association." § 1.07(a)(17) defines an "individual" as "a human being who has been born and is alive." An unborn fetus is not a "person" for purposes of the defense. ("third person defense"). *See Reed v. State*, 794 S.W.2d 806, 810 (Tex.App.—Houston [14th Dist.] 1990, no pet.); *Bobo v. State*, 757 S.W.2d 58, 63 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989); *Crabb v. State*, 754 S.W.2d 742, 744–45 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd), *cert. denied*, — U.S. ——, 110 S.Ct. 65, 107 L.Ed.2d 32 (1989); *Ogas v. State*, 655 S.W.2d 322, 325 (Tex. App.—Amarillo 1983, no pet.).

Penal Code § 9.33 allows an actor to use force or deadly force to protect himself against the *unlawful* force or *unlawful* deadly force that he reasonably believes to be threatening the third person he seeks to protect. The actor's intervention must be "immediately necessary to protect the third person." There is no evidence in the record before us to show that the abortion clinic's staff was using unlawful force or unlawful deadly force on the pregnant women seeking abortions. We hold that the evidence in this record does not establish the elements of the defense of third person defense.

■ § 9.34 of the Texas Penal Code—Protection of Life or Health—states that:

(a) A person is justified in using force, but not deadly force, against another when and to the degree he reasonably believes the force is immediately necessary to prevent the other from committing suicide or inflicting serious bodily injury to himself.

(b) A person is justified in using both force and deadly force against another when and to the degree he reasonably

believes the force or deadly force is immediately necessary to preserve the other's life in an emergency.

Penal Code § 9.34, like the defense of "third person defense," allows the actor to use force or deadly force to assist a *person*. The United States Supreme Court has said that the unborn are not persons under the Fourteenth Amendment. *Roe v. Wade*, 410 U.S. at 158, 93 S.Ct. at 729. Under Texas law, a "person" is defined as a "human being who has been born and is alive." *See* § 1.07(a)(17), (27). In the instant case, there is no evidence to show that appellant's conduct was designed to prevent any person inside the abortion clinic from committing or inflicting serious bodily injury to himself or herself. Paraphrasing the Penal Code to the record before us, there is no evidence to show that appellant's conduct was *"immediately* necessary to preserve" any person's "life in an emergency." (emphasis ours). We therefore hold that the evidence does not establish the elements of the defense of protection of life or health.

■ § 9.22 of the Texas Penal Code—Necessity—provides (footnote omitted) that:

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Subdivisions (1) and (2) contemplate a balancing between the harm arising from the conduct constituting the offense and the harm which the actor's conduct sought to avoid. If the harm sought to be avoided was clearly greater than the harm actually caused (that is, the offense), the actor's conduct causing the offense is justified and he is exonerated. *See* Searcy & Patterson, *Practice Commentary*, Tex.Penal Code Ann. § 9.22 (Vernon 1974). The harm which the actor seeks to prevent must first be a legal harm. *Reed v. State*, 794 S.W.2d at 810.

Thus, in order for the necessity defense to exonerate appellant, the alleged "harm" which she sought to prevent (abortion) must be a legal harm and "clearly outweigh" the harm which resulted from her conduct of violating § 42.03 of the Texas Penal Code, obstruction of a passageway. There is no evidence to show that the abortion clinic's staff or its patients were acting other than within the right of women to terminate their pregnancies afforded them by the United States Supreme Court in *Roe v. Wade*. Even though abortion procedures, like other surgical procedures, may involve certain risks, a suggestion of the possibility of harm will not suffice to support a necessity defense. *Bobo v. State*, 757 S.W.2d at 63; *see also Schermbeck v. State*, 690 S.W.2d 315, 317–18 (Tex.App.— Dallas 1985, no pet.). Accordingly, appellant has failed to show that the "harm" to the clinic's patients or to their unborn clearly outweighs the harm caused when she allegedly obstructed the passageway leading to the abortion clinic. We must therefore hold that the evidence does not establish the legal defense of "necessity."

By point two, appellant complains that the trial court erred when it failed to admit evidence showing that the unborn are "third persons." By point four, she complains that the trial court erred when it failed to admit evidence to prove the defense of necessity. The State of Texas filed a pre-trial motion in limine. This motion requested the trial court to order appellant not to refer to: 1) evidence concerning when life begins, development of the unborn, and the effects of an abortion upon the unborn; 2) testimony concerning abortions and related procedures; 3) testimony concerning abortion procedures, counseling, complications and "clinic's business practices"; 4) appellant's testimony dealing with the reasons for her acts; 5) evidence concerning the unborn and their mothers; 6) any illustrations depicting the unborn before or after abortions; 7) evidence re-

ferring to protection of third persons, protection of life or health and the defense of necessity; and 8) testimony concerning religious or moral beliefs. The State argued that this evidence is irrelevant and should not be admitted. The trial court granted the motion in limine.

In a bill of exceptions, appellant presented Dr. George Flood's live testimony. Appellant also presented summaries of what four other witnesses would testify to, along with their affidavits. Eleven exhibits were also introduced. Dr. Flood, a pediatrician, testified that he was taught that human life began at conception. He is familiar with the writings of Dr. Jerome Lejeune, a geneticist. Dr. Flood read into the record Dr. Lejeune's testimony delivered in a previous trial. Dr. Lejeune refers to the zygote (a fertilized ovum) and embryo (the organism two weeks after fertilization to the end of the seventh or eighth week) as early human beings. Dr. Lejeune sees no difference between an early human being and a "late human being." According to Lejeune, killing a zygote is equivalent to killing a human.

The summaries and affidavits of the nontestifying witnesses generally relate to: 1) the medical procedures, patient complications and business operations which existed in Dallas abortion clinics; 2) descriptions of abortions performed at the abortion clinic where appellant was arrested; 3) moral beliefs concerning abortion; 4) the removal of an aborted fetus from an abortion clinic; 5) the beginning of human life; 6) the pain and death of aborted fetuses; and 7) methods of abortion and the harm which women suffer after receiving an abortion.

Exhibit 1 is a list of literary works and their respective authors. A general statement pertaining to the beginning and development of human life follows each title. This list also contains a portion of the preamble to the "UNITED NATIONS DECLARATION OF THE RIGHTS OF THE CHILD, 1959." The preamble states that "the child needs special safeguards and care, including appropriate legal protection, before ... birth." Dr. Flood based his conclusions on these writings. Exhibits

2 through 5, and 10 are the witness affidavits, including a pro-life leaflet. Exhibits 6 and 7 are a search warrant and affidavit allowing police to search for photographs and a video of an alleged aborted fetus. Exhibits 8 and 9 are photographs of an alleged aborted fetus. Exhibit 11 is a circuit court opinion of a Tennessee case concerning whether "an unborn frozen egg is a [sic] property or a human being."

■ In order for an appellate court to reverse a conviction based upon excluded evidence, it must first conclude that because the proffered evidence was relevant, the trial court erred by excluding it. *See Bird v. State*, 692 S.W.2d 65, 73 (Tex.Crim. App.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1985); *Reed v. State*, 794 S.W.2d at 809. Only then may we decide whether appellant was harmed. *Bird v. State*, 692 S.W.2d at 73; *Reed v. State*, 794 S.W.2d at 809; Tex.R.App.P. 81(b)(2). It is within the trial court's discretion to determine whether evidence is relevant. Thus, appellant must also demonstrate that the trial court's exclusionary rulings amounted to an abuse of discretion. *See Werner v. State*, 711 S.W.2d 639, 643 (Tex.Crim.App.1986); *Johnson v. State*, 698 S.W.2d 154, 160 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Dominguez v. State*, 722 S.W.2d 179, 183 (Tex.App.—Houston [14th Dist.] 1986, no pet.). Evidence as such is relevant if it tends to render a contested material issue more or less probable. *Garza v. State*, 715 S.W.2d 642, 644 (Tex.Crim.App.1986); Tex.R.Crim.Evid. 401.

■ A trial court does not err when it excludes evidence if the evidence fails to show that the defendant is entitled to the defense to which it applies. *Roy v. State*, 552 S.W.2d 827, 830–31 (Tex.Crim.App. 1977), *overruled on other grounds in Johnson v. State*, 650 S.W.2d 414, 416 (Tex. Crim.App.1983); *Hoffart v. State*, 686 S.W.2d 259, 264 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd), *cert. denied*, 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 46 (1986). To show that she was entitled to the defenses asserted, appellant's bill of excep-

tions must demonstrate that she satisfied all the elements of the defense. *Roy,* 552 S.W.2d at 830.

 An unborn child is not at the present time either under the Texas law or the law of the "land" a "person" for the purpose of defending third persons. The excluded evidence does not show that the abortion clinic's staff was using unlawful force or unlawful deadly force against the pregnant women seeking abortions.

Regarding the necessity defense, the excluded evidence does not show that the clinic's staff or its patients were acting outside the right of women given by the United States Supreme Court to terminate their pregnancies. Further, the excluded evidence does not show that the "harm" to the clinic's patients or their unborn clearly outweighs the harm caused when appellant allegedly obstructed the passageway.

The controlling issue in this case is whether appellant obstructed a passageway. Although she maintains that her bill of exceptions raised evidence relevant to the defense of her prosecution, the excluded evidence does not make the State's allegation less probable. *See* Tex.Rule Crim. Evid. 401. Appellant's bill of exceptions is irrelevant to the charge and does not give rise to a fact issue that justified her alleged obstruction of the passageway as the law now stands. We hold, therefore, that the trial court did not abuse its discretion when it excluded the evidence.

 By point six, appellant complains that the trial court in finding her guilty denied her constitutional rights of speech and expressive speech. Appellant's contention is that her constitutional right to express her dissatisfaction for legalized abortion outweighs the rights of a private property owner. The United States Supreme Court has held that before a private property owner can be subjected to another's free-speech rights, the privately owned property must "assume to *some significant degree* " the functional attributes of public property devoted to public use. *Central Hardware Co. v. National Labor Relations Board,* 407 U.S. 539, 547, 92 S.Ct. 2238, 2243, 33 L.Ed.2d 122 (1972).

In the instant case, there is no evidence to show that the abortion clinic assumed the functional attributes of public property devoted to or for public use. The mere fact that a business is "open to the public" does not mean that the business has assumed "to some significant degree" the functional attributes of public property devoted to public use. *See Central Hardware,* 407 U.S. at 547, 92 S.Ct. at 2243.

The trial court's judgment is AFFIRMED.