COMMONWEALTH *vs.* SEAN BROGAN.

Middlesex. January 5, 1993. - May 10, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Contempt. Practice, Criminal,* Venue, Contempt proceeding.  *Constitutional Law,* Place of trial. *Necessity. Abortion. Injunction.*

A defendant charged in an indictment with violation of a preliminary injunction was properly tried for criminal contempt in the Superior Court in the county in which the injunctive order was entered. [171-174] NOLAN, J., dissenting, with whom LYNCH and O'CONNOR, JJ., joined.

At the trial of an indictment alleging three counts of criminal contempt for violation of a lawful court order, the judge properly excluded evidence bearing on the defense of necessity, where the defendant did not demonstrate that any harm would have resulted if the defendant had not violated the order. [174-177] LIACOS, J., concurring.

The prohibitions of an injunction were not rendered unclear or ambiguous by the appearance of the conjunction "and" separating the two proscriptive elements of the injunction. [177-178]

INDICTMENT found and returned in the Superior Court Department on March 28, 1991.

A motion to dismiss was heard by *Robert H. Bohn, Jr., J.,* and the case was tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Dwight G. Duncan* for the defendant.

*Elisabeth J. Medvedow,* Assistant Attorney General, for the Commonwealth.

WILKINS, J. The defendant was convicted in the Superior Court in Middlesex County on three counts of an indictment charging him with violating a preliminary injunction issued in the Middlesex Superior Court. A copy of the substance of that injunction is set forth in the margin precisely as it was

issued.[1] It enjoined certain persons, including the defendant by name, from engaging in certain obstructive conduct with respect to facilities, and with respect to certain persons involved with facilities, that provide abortion counselling or services. We transferred the defendant's appeal to this court on our own motion. We affirm the convictions.

The contumacious acts were alleged to have occurred in Brookline in Norfolk County, in Boston in Suffolk County, and in New Bedford in Bristol County. By pretrial motion, the defendant moved unsuccessfully to dismiss the indictment on the ground that the indictment charged no crime committed in Middlesex County and hence the venue was improper. In the first numbered portion of this opinion we shall conclude that venue was proper.

The Commonwealth moved before trial that any evidence relevant to the defense of necessity be excluded from the trial. The trial judge allowed the motion. The defendant was permitted to make an offer of proof concerning the defense of necessity in a voir dire hearing held in the course of the trial.

[1]

*"ORDER*

"After hearing, it is *ORDERED* that the above named defendants, and their officers, agents, servants, employees and those persons in active concert or participation with them who receive actual notice of this Order, are preliminarily enjoined from:

"a.    trespassing on, blocking, or in any way obstructing access (either ingress or egress) to any facility in the Commonwealth which provides abortion counselling or services, and

"b.    *physically restraining or obstructing or committing any acts of force or violence against persons entering, leaving, working at or seeking to obtain services from any facility* in the Commonwealth which provides abortion counselling or services,

until further order of the Court.

"Pursuant to G.L. c. 12 §§11H and 11J, VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE.

                                        /s/ Peter M. Lauriat, J.

                        Peter M. Lauriat
                        Justice of the Superior Court

"Dated: May 21, 1990."

The question whether exclusion of the defense of necessity was proper is the subject of the second numbered section of this opinion. We conclude that the defendant did not present evidence sufficiently raising the defense of necessity as to warrant submission of the issue to the jury.

Both parties grant that the Commonwealth had to prove, as to each alleged incident, that "there was a clear, outstanding order of the court, that the defendant knew of that order, and that the defendant clearly and intentionally disobeyed that order in circumstances in which he was able to obey it." *Furtado* v. *Furtado*, 380 Mass. 137, 145 (1980). The judge put the case to the jury in these terms. The defendant objects, however, to the judge's instruction to the jury that so interpreted the injunction as to deny to the defendant a particular argument that the injunction was not clear and unambiguous. We reject this contention in the third numbered section of this opinion.

The facts presented to prove that the defendant was guilty of criminal contempt are not important to an understanding and resolution of the issues argued on appeal. There was evidence that (1) on August 23, 1990, the defendant with others blocked entrance to an abortion clinic on Beacon Street in Brookline, (2) on November 2, 1990, he trespassed and obstructed activities at a facility that provided abortion counselling and services in the Brighton section of Boston, and (3) on January 17, 1991, he trespassed and obstructed activities at a facility in New Bedford that performed abortions.

1. The defendant argues that he had a constitutional right to be tried in the vicinity where the facts on which the indictment is based allegedly happened and that, in these circumstances, "in the vicinity" means in the counties of Norfolk, Suffolk, and Bristol, respectively, and not in the county of Middlesex, where he was tried. See Massachusetts Declaration of Rights, art. 13 ("[i]n criminal prosecutions, the verification of facts in the vicinity where they happen, is one of the greatest securities of the life, liberty, and property of the citizen"). A Superior Court judge denied the defendant's

pretrial motion to dismiss the indictment on the ground of improper venue.

There are opinions in which the requirement of art. 13 of a trial "in the vicinity" has been stated as meaning a trial in the county where the events are alleged to have occurred. See *Commonwealth v. Ries*, 337 Mass. 565, 569 (1958); *Commonwealth v. Anthes*, 5 Gray 185, 223 (1857). In neither opinion, however, was the comment made in connection with a defendant's challenge to the venue of his trial. In *Commonwealth v. Parker*, 2 Pick. 550, 553 (1824), this court said that the use of the general term "vicinity," rather than the more precise, technical term "county," by the drafters of art. 13, indicates an intention that a narrow interpretation of the word "vicinity" was not appropriate. In the *Parker* case, this court said that art. 13 does not bar "a trial of an offence, in any other county than that in which it happened; nor is it affirmative of a right in the citizen to be tried in any particular county." *Id.* It is well established that "[a]lthough art. 13 imposes some limitation on the places where a criminal defendant may be tried, it allows the Legislature discretion, consistent with the public interest and the interests of justice, to establish venue requirements for criminal trials." *Opinion of the Justices*, 372 Mass. 883, 897 (1977). See *Commonwealth v. Duteau*, 384 Mass. 321, 323-324 (1981). See also G. L. c. 277, §§ 57A, 58B, 59, 60 (1990 ed.).[2]

---

[2]The dissent is wrong in stating that we have "enunciated a general rule regarding venue" to the effect that a "trial must take place[] in the county where the crime occurred." *Post* at 180. The full sentence in which the just-quoted language appears is: "Massachusetts has generally followed the common law rule that an indictment must be found, and the trial must take place, in the county where the crime occurred." *Commonwealth v. Duteau*, 384 Mass. 321, 323 (1981). We have not stated that art. 13 adopted the common law rule. Indeed, we could not properly reach such a conclusion. This court, citing various Colonial enactments providing for trials in counties other than those in which offenses were committed, long ago recognized that the drafters of art. 13 must have known "that the principle of the common law limiting the trials of crimes to the county within which they were committed, had been necessarily departed from by

There is no statute prescribing any particular venue for the trial of an indictment alleging contempt of a court order. The venue question, therefore, is one of common law within any limitation that art. 13 may impose. In *Crocker* v. *Justices of the Superior Court*, 208 Mass. 162, 180 (1911), this court held that a trial judge had the authority under the common law to transfer a criminal trial to another county, but in that case the defendant wanted the transfer and did not assert any art. 13 rights. We have said, as to a criminal contempt proceeding for nonsupport, that ordinarily such a trial "should be held in the court whose order is alleged to have been contumaciously violated." *Furtado* v. *Furtado, supra* at 143.[3]

As a principle of common law, consistent with the inherent right of a court to punish for a violation of its own orders, a defendant may properly be tried for criminal contempt in the court in which the order was entered. See generally as to the contempt authority of a court, *Matter of Vincent*, 408 Mass. 527, 530 (1990) ("[i]t is well settled that a court has the inherent power to impose sanctions for contempt of its orders"); *Doe* v. *Commonwealth*, 396 Mass. 421, 422 (1985) ("[a] court has the inherent power to impose sanctions for contempt of its orders"); *New England Novelty Co.* v. *Sandberg*, 315 Mass. 739, 746, cert. denied, 323 U.S. 740 (1944) ("[e]very court of superior jurisdiction has the inherent power to compel obedience to its decrees and to punish those who obstruct or degrade the administration of justice"). [4] Any limitation on this common law principle by ap-

---

our ancestors in the early history of the country." *Commonwealth* v. *Parker*, 2 Pick. 550, 553, 554 (1824).

[3]The defendant argues that the venue for a nonsupport contempt proceeding provides no guidance in applying art. 13 because, in such a case, no events took place in any vicinity. On the other hand, in a criminal contempt proceeding for nonsupport there are relevant facts, such as the alleged contemnor's ability to pay when he should have and his clear intention to disregard a valid court order known to him.

[4]Massachusetts R. Crim. P. 44 (a), 378 Mass. 920 (1979), states as to contempt charges not based on summary contempt that "the case shall proceed as a criminal case in the court in which the contempt is alleged to

plication of the provisions of art. 13 would not prohibit the trial in Middlesex County of a contempt indictment based on events that occurred in Brookline in Norfolk County, Boston in Suffolk County, and in New Bedford in Bristol County. Cf. *Commonwealth* v. *Duteau, supra* at 324, 327 (upholding statute which had effect of transferring town of Athol in Worcester County to Franklin County for trial of Superior Court cases).

One concept underlying art. 13 is that fairness to a defendant normally requires that the defendant not be transported far away for trial but rather be tried where there is access to witnesses and evidence for the defense. See D.L. Kershen, Vicinage, 29 Okla. L. Rev. 801, 806-807, 810 (1976). Today, more convenient means of communication and transportation than existed in 1780 makes geographically less narrow art. 13's mandate of fairness. We think it is neither mischievous nor unjust to try a person in Cambridge for contempt of a Middlesex Superior Court order committed in the abutting city of Boston or in the adjacent town of Brookline.[5] Neither logic nor fairness nor art. 13 nor the common law requires that there be three separate trials in three separate counties of the violations with which the defendant is charged.[6]

2. The trial judge properly excluded evidence bearing on the defense of necessity. The circumstances did not warrant submission of the defense of necessity to the jury, and the judge properly allowed the Commonwealth's motion in limine to exclude any evidence purporting to bear on that

---

have been committed." Rule 44 (a) may be fairly read to relate only to contempt allegedly committed within the courtroom.

[5]Another concept once underlying art. 13 has no continuing meaning: that the defendant have a jury "of his neighbors, who know him and who know the witnesses." *Commonwealth* v. *Parker,* 2 Pick. 550, 552 (1824). See *Opinion of the Justices,* 372 Mass. 883, 897 n.7 (1977).

[6]Our established common law rule that the court in the county where an order was issued may try a person for contempt of that order does not, as the dissent says, authorize impermissible forum shopping.

We observe that the dissent implicitly rejects the defendant's argument that art. 13 barred his trial for contempt in the Middlesex Superior Court.

defense. See *Commonwealth* v. *Hutchins*, 410 Mass. 726, 729 (1991).

In deciding whether circumstances might justify a defendant's unlawful conduct because that conduct was necessary, courts generally have looked first to the question whether the harm of the crime committed by the defendant, as a matter of policy, was significantly exceeded by the harm that would have resulted if the defendant had not violated the law. See *id.* at 729-730; *Commonwealth* v. *Schuchardt*, 408 Mass. 347, 349 (1990); *Commonwealth* v. *Hood*, 389 Mass. 581, 590-591 (1983); *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 376-377 (1982).

It is the apparently universal view of courts that there is no harm, as that concept is understood in the necessity defense, in the lawful activities of clinics providing abortion counselling and services. Many courts reach this conclusion because a woman's right to an abortion is constitutionally protected under *Roe* v. *Wade*, 410 U.S. 113 (1973).[7] See *Moe* v. *Secretary of Admin. & Fin.*, 382 Mass. 629, 647, 654-655 (1981). Some courts have arrived at this conclusion because a State statute recognized the lawfulness of abortions.[8] Other courts have relied on the existence of both a Federal constitutional right and State legislation legalizing

---

[7]See, e.g., *Allison* v. *Birmingham*, 580 So. 2d 1377, 1382-1383 (Ala. Crim. App. 1991); *People* v. *Garziano*, 230 Cal. App. 3d 241, 243-244, cert. denied, 502 U.S. 1014 (1991) (Federal and State Constitutions); *Gaetano* v. *United States* 406 A.2d 1291, 1294 (D.C. 1979); *People* v. *Krizka*, 92 Ill. App. 3d 288, 290-291 (1981); *State* v. *Aguillard*, 567 So. 2d 674, 677 (La. Ct. App. 1990); *Sigma Reprod. Health Ctr.* v. *State*, 297 Md. 660, 689-690 (1983); *State* v. *Cozzens*, 490 N.W.2d 184, 192 (Neb. 1992); *Commonwealth* v. *Wall*, 372 Pa. Super. 534, 540-542 (1988); *Boushey* v. *State*, 804 S.W.2d 148, 151 (Tex. Ct. App.), cert. denied, 502 U.S. 912 (1991); *State* v. *Horn*, 126 Wis. 2d 447, 455-456 (Ct. App. 1985).

[8]See, e.g., *Cleveland* v. *Anchorage*, 631 P.2d 1073, 1080-1081 (Alaska 1981); *Bird* v. *Anchorage*, 787 P.2d 119, 121-122 (Alaska Ct. App. 1990); *Hoover* v. *State*, 198 Ga. App. 481, 482 (1991) (defense of justification); *State* v. *Thomas*, 103 N.C. App. 264, 267 (1991); *State* v. *Clowes*, 310 Or. 686, 695, 698-699 (1990). See also G. L. c. 112, §§ 12K-12U (1990 ed.).

abortion in rejecting the necessity defense because abortion is not a legal harm.[9]

A claim of the defense of necessity is particularly suspect in this case. In the cases just cited from other jurisdictions, the criminal activity involved trespass, obstruction of passageways, or similar conduct. Here the defendant violated a court order directed against him by name and forbidding the specific acts that the defendant committed. Moreover, on its face, the injunction stated, pursuant to provisions of the State civil rights law (G. L. c. 12, §§ 11H & 11J [1990 ed.]), that a violation of its terms was a criminal act. When a court order has been issued to protect against a repetition of violations of individuals' civil rights, it would be a rare case in which the defense of necessity would have a role so as to justify a violation of that court order. It would be paradoxical for the law to recognize justified necessity in a defendant's violation of a lawful court order that forbade the very conduct that the defendant now claims was necessary. The defendant's avenue of relief is to challenge or seek to modify the court order, not to violate it.

The defendant's offer of proof on his defense of necessity does not make inapplicable the principles we have just stated. He offered to show the circumstances of an incident that occurred outside a Brookline clinic on December 18, 1990, to demonstrate that he believed that abortions not authorized by law were being performed. The incident did not occur at the clinic in Brookline where the defendant obstructed access. In addition, it occurred after two of the contempt violations with which the defendant is charged had taken place (Brookline and Boston), and it did not occur at the clinic (New Bedford) where the defendant thereafter allegedly violated the court order. Moreover, the incident does not tend to

---

[9]See, e.g., *State v. Anthony,* 24 Conn. App. 195, 209, cert. denied, 502 U.S. 913 (1991); *State v. O'Brien,* 784 S.W.2d 187, 192 (Mo. Ct. App. 1989); *People v. Crowley,* 142 Misc. 2d 663, 668-669 (N.Y. Just. Ct. 1989); *State v. Sahr,* 470 N.W.2d 185, 191 (N.D. 1991); *Kettering v. Berry,* 57 Ohio App. 3d 66, 68-69 (1990); *Commonwealth v. Markum,* 373 Pa. Super. 341, 347-348 (1988), cert. denied, 489 U.S. 1080 (1989).

show that the Brookline clinic performed any abortions not authorized by law or that any person would reasonably believe that to be so.[10]

3. The judge correctly construed the injunction when he instructed the jury that the defendant would be guilty if they found that he had violated any one of the six obligations set forth in the order, provided that the jury also found that the order was clear and unambiguous, that the defendant had knowledge or notice of the order, and that he clearly and intentionally disobeyed it.[11] We, therefore, reject the defendant's argument that the judge erred in foreclosing the jury from considering whether the injunction forbade conduct that was described in clause (a) only if that conduct was coupled with conduct described in clause (b). From the format of the injunction, see note 1 above, it is apparent that the defendant was enjoined (1) from the conduct described in clause (a) (which concerns facilities) and (2) from the conduct described in clause (b) (which concerns people). If the two clauses were intended to have an interrelationship, there would be no reason to have subclauses separated and designated as "a" and "b." Moreover, the break after the word "from" indicates that each clause is to be read with the words "enjoined from" serving as an introduction to it, so as to state in effect that the defendant is "enjoined from (a), and enjoined from (b)." No reasonable person could read the

[10]Because we have concluded the defense of necessity was not raised by the defendant's offer of proof on the competing harms theory, we need not discuss the question whether the defendant presented enough evidence on the other elements of the necessity defense to create a reasonable doubt on the issue. See *Commonwealth* v. *Hutchins*, 410 Mass. 726, 730-731 (1991). Our opinion should not be read to suggest that, if a clinic is or is reasonably believed to be performing abortions not authorized by law, the defense of necessity would be available to justify the violation of a court order.

[11]The six obligations, three in clause (a) and three in clause (b) of the injunction, are as follows: (1) trespassing on, (2) blocking, or (3) obstructing access to a facility providing abortion counselling and services, and (4) physically restraining, (5) obstructing, or (6) committing acts of force or violence against persons entering, leaving, working at, or attempting to obtain services from such a facility.

injunction and conclude, for example, that he could physically restrain persons seeking to enter or leave a facility as long as he was not trespassing on or obstructing access to a facility.

We find some justification for the use of "and" and for its adequacy in describing two separate elements in the injunction in the Commonwealth's argument that the word "and" is appropriate in criminal indictments and complaints charging the violation of a crime that could be committed in more than one manner. An indictment or complaint should "not charge a party disjunctively, so as to leave it uncertain what is relied on as the accusation against him." *Commonwealth v. Grey*, 2 Gray 501, 501-502 (1854). This rule of long standing is based on the requirement of certainty in criminal pleading. See *Commonwealth v. Dowe*, 315 Mass. 217, 220 (1943); *Commonwealth v. Curtis*, 9 Allen 266, 269-270 (1864). "Where a crime can be committed in any one of several ways, an indictment properly charges its commission in all those ways, using the conjunction 'and' in joining them. Then the defendant should be convicted if it is proved that he committed the crime in any of those ways." *Commonwealth v. Dowe*, *supra* at 219-220. See *Commonwealth v. Murphy*, *ante* 161, 164 (1993). Thus, by analogy, an injunction forbidding the doing of (a) and (b) would be violated by the doing of either (a) or (b).

The real test for our purposes, however, is whether a reasonable person would be warranted in concluding that the prohibitions of the injunction were not clear and unambiguous because of the presence of the word "and." We conclude that there is no reasonable basis for construing the injunction as the defendant argues that it should be construed.[12]

*Judgments affirmed.*

---

[12]We see no merit in the defendant's argument that G. L. c. 12, § 11H (1990 ed.), should be used as a guide to the construction of the injunction.

LIACOS, C.J. (concurring). I agree with the result reached by the court, but disagree with the court's reasoning on its treatment of the necessity defense. I concur for two reasons. First, the defendant's offer of proof fell far short of establishing a prima facie case of the defense of necessity. See *Commonwealth* v. *Schuchardt*, 408 Mass. 347, 349 (1990). Second, the defendant failed to appeal or seek to modify the injunction.

I write separately to emphasize my continuing concern with the use of motions in limine to prevent evidence supporting a defense from being heard by the jury. *Commonwealth* v. *Hood*, 389 Mass. 581, 596 (1983) (Liacos, J., concurring). Additionally, I remain concerned about this court's use of the competing harms test to engage in "speculative judicial fact finding." *Commonwealth* v. *Hutchins*, 410 Mass. 726, 733 (1991) (Liacos, C.J., dissenting). I need not reiterate here the analysis I set forth in those opinions. It is sufficient simply to point out that the rationale behind the common law defense of necessity is based on the recognition that "the value protected by the law is, as a matter of public policy, eclipsed by a superseding value which makes it inappropriate and unjust to apply the usual criminal rule." *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 377 (1982). I believe that a jury, not a judge, ordinarily should be allowed to determine such an issue. "The essential purposes of the jury trial are twofold. First, the jury temper the application of strict rules of law by bringing the common sense judgment of a group of laymen to the case. Second, the jury stand as a check on arbitrary enforcement of the law. . . . The legitimacy of a jury verdict depends on the ability of the jury to perform these two functions." [Footnote omitted.] *Commonwealth* v. *Hood, supra* at 597 (Liacos, J., concurring). See *Commonwealth* v. *Schuchardt, supra* at 352-353 (Liacos, C.J., concurring in part & dissenting in part).

NOLAN, J., (dissenting, with whom Lynch and O'Connor, JJ., join). Sean Brogan is charged with criminal contempt of court. We have long held that a defendant so charged is entitled to protections typically afforded criminal defendants. See *Furtado* v. *Furtado*, 380 Mass. 137, 142 (1980). While we have said that art. 13 "is merely declaratory of the sense of the people, that the proof of facts in criminal prosecutions should be in the vicinity or neighbourhood where they happen," *Commonwealth* v. *Parker*, 2 Pick. 550, 552 (1824), we have enunciated a general rule regarding venue: "trial must take place[] in the county where the crime occurred." *Commonwealth* v. *Duteau*, 384 Mass. 321, 323 (1981). See *Commonwealth* v. *Handren*, 261 Mass. 294, 296-297 (1927).

We have recognized exceptions to the general rule if a fair trial in the county in which venue is proper cannot be obtained or if the Legislature amends the general rule, within constitutional limits. See *Crocker* v. *Justices of the Superior Court*, 208 Mass. 162, 180 (1911) (impartial trial impossible in court of proper venue). Each of the exceptions boasts of common law origin. We have upheld these exceptions in the face of historical evidence that they were "recognized and utilized prior to the adoption of art. 13, both in England and in Massachusetts." *Opinion of the Justices*, 372 Mass. 883, 897 (1977).

In the present case, the injunction issued from the Superior Court in Middlesex County. Brogan committed the allegedly contumacious acts in Bristol, Norfolk, and Suffolk Counties. The defendant's trial took place in Middlesex County. As the issuance of an order is not a criminal act attributable to the defendant, and because the facts do not fall within either of the aforementioned exceptions, I conclude that a trial in Middlesex County is inappropriate. Accordingly, I dissent.

Today the court engrafts its imprimatur on the absence of venue here in a mischievous, unjust, and heretofore unprecedented manner. Lacking historical support, or any support for that matter, the court declares: "As a principle of common law, consistent with the inherent right of a court to pun-

ish for a violation of its own orders, a defendant may properly be tried for criminal contempt in the court in which the order was entered." *Ante* at 173. In so stating, the court diverges from an interpretive path well worn in our decisions to reach a result it deems "logical" and "fair." *Ante* at 174. In failing to ground its decision in the historical meaning of the venue clause, the court casts aside, without justification, the manner in which we have interpreted it. One would think that the court would need to say more before casting aside a long-standing interpretation. The court's failure to do so, in my view, compromises judicial decision making and gives the appearance of result-oriented jurisprudence.

The court states, *ante* at 173, "We have said as to a criminal contempt proceeding for nonsupport that ordinarily such a trial 'should be held in the court whose order is alleged to have been contumaciously violated.' *Furtado* v. *Furtado*, *supra* at 143." The present case is unlike *Furtado*. Nonsupport does not involve an alleged contumacious act occurring at a specific place other than the county where the court sits. Nonsupport involves inaction and no constitutional or traditional value is offended by a rule that would require a trial in the court whose order is violated. In the present case, however, the defendant is charged with performing criminal (G. L. c. 12, § 11H & 11J) and criminally contumacious acts in three counties other than the county in which his contempt trial was held. If, indeed, as this court has traditionally held, defendants against criminal contempt charges should receive procedural protections similar to those afforded to other criminal defendants, the defendant in this case was entitled to be tried in the county or counties where his alleged contumacious acts took place.

In deciding that a defendant may properly be tried for criminal contempt in the court in which the underlying order was entered regardless of the locus of the act, this court rewrites the common law to mean essentially what it wants it to mean. Indeed, with the wink of an eye and a nod of the head this court disembowels a rule that has been "established by history and experience." *Commonwealth* v. *Ries*, 337

Mass. 565, 569 (1958). The court suggests that it is hyperbolical to refer to a trial in a county in which there is no venue as mischievous or unjust. It is not hyperbolical but quite accurate unless the court is bent on destroying our law of venue.

It is clear that the court today has issued an invitation to the Commonwealth to go "forum shopping" whenever it wishes. The court neglects to point out that the Superior Court is Statewide and our settled principles of venue require the Commonwealth to bring its Superior Court actions in the appropriate county.

This court is not empowered to declare that the venue concept lacks meaning in these circumstances. Accordingly, I dissent.