DENNIS SMITH vs. COMMONWEALTH.

Suffolk. October 4, 1994. - May 9, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Jury and Jurors. Constitutional Law*, Jury. *Practice, Criminal*, Venue, Jury and jurors, Place of trial, Empanelment of jury. *County*, Courts.

A criminal defendant claiming a trial de novo, whose case was transferred pursuant to an administrative order to Middlesex County from Suffolk County, was entitled under art. 12 of the Massachusetts Declaration of Rights to a change of venue back to Suffolk County for trial, where the defendant was nonwhite and where in Suffolk County the population from which jurors would be drawn was diverse and was made up of four times the percentage of minorities as were in the population of Middlesex County. [292-298] LYNCH, J., dissenting.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 2, 1994.

The case was reported by *Abrams*, J.

*Gordon E. Feener* for the defendant.

*Jane A. Sullivan*, Assistant District Attorney, for the Commonwealth.

*Stephen A. Jonas & Ozell Hudson, Jr.*, for Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association & others, amici curiae, submitted a brief.

LIACOS, C.J. After having been convicted of various drug offenses in a jury-waived session of the Chelsea Division of the District Court Department[1] in July, 1993, Dennis Smith, whom we shall call the defendant, exercised his then-existing right to a de novo trial before a jury of six.[2] Pursuant to an

---

[1] The offenses allegedly were committed in Chelsea, which is in Suffolk County.

[2] The right to an appeal for a jury trial de novo after a jury-waived trial was eliminated by St. 1992, c. 379, § 193.

order of the Chief Justice of the District Court Department, the defendant's pending case was transferred to the so-called northern trial session of the District Court, held in Cambridge (Middlesex County). The defendant moved for a change of venue back to Suffolk County. A judge of the District Court denied this motion and declined to stay the case pending the outcome of *Commonwealth* v. *Siciliano, post* 303 (1995), or to report the case pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979). The defendant sought relief in the county court pursuant to G. L. c. 211, § 3 (1992 ed.). The single justice reserved and reported the case to the full court. We conclude that the defendant is entitled to relief.

The defendant was arrested in June, 1993, for various drug-related offenses by officers of the Chelsea police department. After a jury-waived trial pursuant to G. L. c. 218, § 26A, as appearing in St. 1978, c. 478, in July, 1993, in the Chelsea District Court sitting in Cambridge,[3] the defendant was convicted and exercised his right to a de novo trial by a jury of six pursuant to G. L. c. 218, § 27A, as amended through St. 1992, c. 133, § 557. Through a turn of events

---

[3]On March 5, 1992, the Justices of the Supreme Judicial Court ordered the termination of operations at the facility housing the Chelsea Division of the District Court Department. This order was necessitated by the unsafe physical conditions of the court facility in Chelsea. On March 6, 1992, the Justices ordered that all new and pending matters before the Chelsea District Court "be transacted" at a court facility in Cambridge.

In August, 1992, the Chief Justice of the District Court Department ordered that criminal jury trials arising in the Chelsea Division were to be held in Cambridge with jurors from Middlesex County. Until that time, even after the closing of the Chelsea court facility, criminal jury trials arising in the Chelsea Division had been held in the Boston Municipal Court with jurors from Suffolk County. Chelsea is in Suffolk County.

In December, 1993, the Chief Justice of the District Court ordered that jury trials arising in the Brighton, Charlestown, Chelsea and East Boston Divisions of the District Court were to be held in the so-called Chelsea Court, northern trial session. Pending Chelsea jury cases were transferred to this northern trial session, also held in Cambridge with jurors from Middlesex County.

The defendant's appeal to a jury session is pending in the northern trial session. Thus, a jury drawn from Middlesex County, not Suffolk County, would consider his case.

described in note 3, *supra*, the defendant's case was to be heard in the northern trial session sitting in Cambridge with a jury drawn from Middlesex County. The defendant sought a change of venue so that his case would be considered by a jury drawn from Suffolk County. The District Court judge denied this motion.

The defendant is nonwhite. The record contains various statistics from the 1990 United States Census of Population and Housing and from the Massachusetts Institute for Social and Economic Research of the University of Massachusetts (MISER). We need not recite all those data here. The most significant statistics for our purposes show that in Suffolk County, minorities[4] make up 38% of the population while in Middlesex County, minorities make up 10% of the population. The District Court judge noted that "the minority percentage of the Suffolk County population (38%) is nearly four times greater than the minority percentage of the Middlesex County population (10%), and the nonwhite percentage of the Suffolk County population (34%) is more than four times greater than the nonwhite percentage of the Middlesex County population (8%)."

The defendant raises a number of issues, both constitutional and statutory, in support of his argument that he is entitled to a change of venue. We need only to consider art. 12 of the Massachusetts Declaration of Rights to conclude that the defendant is entitled to relief. Hence, we do not discuss any Federal constitutional arguments.

We have stated in *Commonwealth* v. *Aponte*, 391 Mass. 494, 506 (1984), that "art. 12 safeguards defendants against systematic, albeit unintentional, discrimination against their protected class." Cf. *Duren* v. *Missouri*, 439 U.S. 357, 364 (1979) (defendant must show that underrepresentation is due to "systematic exclusion" to make out claim under Sixth Amendment to the United States Constitution).

---

[4]MISER defines "minorities" as the total Hispanic population plus the total nonwhite population.

Exclusion is "systematic" when it is "inherent in the particular jury-selection process utilized." *Duren* v. *Missouri*, *supra* at 366. See *Taylor* v. *Louisiana*, 419 U.S. 522, 523, 538 (1975) (statute exempting women from jury service unless they requested in writing to serve resulted in unconstitutional systematic exclusion under Sixth Amendment); *Commonwealth* v. *Aponte, supra* at 509-510 (former Essex County "key man" jury selection system violated art. 12 when it excluded minorities from service). As these cases demonstrate, the inquiry does not focus on the jury selection process itself, but instead focuses on the result of the process using an analysis of the process. Thus, if exclusion of a particular group arises as a result of the system by which potential jurors are chosen, that exclusion is "systematic."[5]

In this case, there is no contention that Middlesex County jury pools systematically exclude any particular group or class of residents of Middlesex County. Here, the defendant, a black male, contends, in essence, that, even if jurors are to be drawn from Middlesex County for trials of crimes allegedly committed in Suffolk County, it is the population of Suffolk County that is relevant for determining whether members of certain groups or classes are being excluded from potentially serving as jurors during the defendant's trial. Thus, the defendant would conclude that, since the population of Middlesex County, from which jurors will be drawn, is not similar to that of Suffolk County for Sixth Amendment and art. 12 purposes, and since this dissimilarity occurs as a result of administrative changes promulgated by the District Court Department, the exclusion of particular groups or classes is systematic.

The defendant's argument is persuasive. The basis for this procedure appears to be a general order designed to facilitate the operation of the new "one trial system." Although this transfer is not a "jury selection process" as we typically use that phrase, the transfer nevertheless caused a change in the

---

[5]Contrary to the dissent's position, the exclusion is "systematic" in a constitutional sense.

racial composition of the potential jury pool. The effect of the potential jury pool resulting from the transfer is the same to the defendant as if there had been exclusion in the mechanics of the juror selection process. See *Commonwealth v. Soares*, 377 Mass. 461, 480-481, cert. denied, 444 U.S. 881 (1979), quoting *Peters v. Kiff*, 407 U.S. 493, 503-504 (1972) (discussing significant, although perhaps unknowable, effect of excluding certain groups from potential jury service).

Article 12 entitles the defendant "to a jury selection process free of discrimination against his grouping in the community." *Commonwealth v. Aponte, supra* at 507, quoting *Commonwealth v. Soares, supra* at 478. Under art. 12, "a fair jury is one that represents a cross section" of individuals and ideas in the community. *Id.*[6]

Our State Constitution often provides to criminal defendants broader protection than does the Federal Constitution under similar provisions. *Commonwealth v. Aponte, supra* at 506, and cases cited. Further, we stated: "Two recent decisions of this court indicate through their analysis of State constitutional and statutory provisions that art. 12 safeguards defendants against systematic, *albeit unintentional*, discrimination against their protected class . . . . See *Commonwealth v. Bastarache*, 382 Mass. 86, 101-103 (1980); *Commonwealth v. Soares, supra* at 478-479, 481-482." (Emphasis supplied and footnotes omitted.) *Id.* Additionally, we said, "It is likely that the distinction between equal protection analysis (grand juries) and Sixth Amendment analysis (petit juries) found in Federal law . . . is not relevant to

---

[6]In his memorandum of decision, the District Court judge stated that the defendant's burden in making out a claim under art. 12 was the same as that under the Sixth Amendment. The judge relied on *Commonwealth v. Colon*, 408 Mass. 419, 437 (1990). The *Colon* case, in turn, relied on *Commonwealth v. Bastarache*, 382 Mass. 86, 96-97 (1980). The cited portion of *Bastarache*, however, was a discussion of the Sixth Amendment. *Id.* Article 12 is not necessarily coextensive with the Sixth Amendment. See *Commonwealth v. Aponte*, 391 Mass. 494, 506-508 (1984) (discussing protection afforded by art. 12); *Commonwealth v. Soares*, 377 Mass. 461, 478, cert. denied, 444 U.S. 881 (1979) (same).

State law analysis under art. 12." *Id.* at 506 n.20. We believe that, in this case, art. 12 provides sufficient grounds for the defendant to prevail.

"[T]his court has noted that a defendant's constitutional right under art. 12 of the Declaration of Rights to a trial by jury consists of the right to have 'issues of fact . . . determined by the composite judgment of a fairly numerous and representative body of impartial residents of the county selected at large rather than by the judgment of one or of a small number of single individuals who may be subject to peculiar prejudices or whose station and personal experiences in life may have failed to provide them with sufficient understanding of the conditions and circumstances in which the parties acted.' *Commonwealth* v. *Bellino*, 320 Mass. 635, 639, cert. denied, 330 U.S. 832 (1947). Surely, any practice in drawing jury lists that failed to produce 'a fairly numerous and representative body of impartial residents' would be inconsistent with the requirements of . . . art. 12 of the Declaration of Rights. More recently we said that 'the ultimate touchstone of constitutionality is whether the system as a whole and in a general sense is or is not calculated to produce as triers a fair cross-section of the populace.' *Commonwealth* v. *Peters*, 372 Mass. 319, 322 (1977)." *Commonwealth* v. *Bastarache*, 382 Mass. 86, 93-94 (1980).

We "express 'particular sensitivity in analyzing jury selection practices to discrimination against those groupings in the community that are set out in art. 1 of the Declaration of Rights.' " *Commonwealth* v. *Aponte, supra* at 507, quoting *Commonwealth* v. *Bastarache, supra* at 101. Thus, we have concluded that the exercise of peremptory challenges to exclude members of discrete groups in the community, based solely on membership in those discrete groups, violated art. 12. *Commonwealth* v. *Soares, supra* at 488. Similarly, we have concluded that the nonrandom, so-called "key man" grand juror selection process which resulted in underrepresentation of certain minority groups violated art. 12. *Commonwealth* v. *Aponte, supra* at 508-509. In *Aponte*, we noted that "the defendants were entitled . . . to a jury selection

procedure which *precluded the possibility of even an unintentional exclusion* of prospective jurors based on national origin" (emphasis added). *Id.* at 509.

In this case, the defendant could be tried before a jury drawn from Suffolk County but for administrative impediments. The record reflects that the Suffolk County population is substantially more diverse than that of Middlesex County and that the minority population of Middlesex County is a substantially smaller percentage of the whole than that of Suffolk County.

Given our case law in this area and our "particular sensitivity" to this issue, this result cannot stand. The Middlesex County jury pool does not reflect the diversity of Suffolk County. There is no significant distinction between this defendant's situation and the situation faced by a defendant who is to be tried by jurors selected from a jury pool which was drawn up using an exclusionary process. Each such defendant would lose the right to be tried by jurors drawn from a pool representing a fair cross section of the community. Both such defendants should enjoy the protection of art. 12.

"The right to a proper jury cannot be overcome on merely rational grounds." *Taylor* v. *Louisiana*, 419 U.S. 522, 534 (1975). In *Commonwealth* v. *Duteau*, 384 Mass. 321, 332 (1981), we ordered that residents of Athol in Worcester County should be included on lists from which Franklin County jury pools were drawn, because crimes committed in Athol were to be tried in Franklin County. We issued this order even though we were not constitutionally or statutorily mandated to do so. *Id.* Mere administrative convenience cannot outweigh a defendant's rights under art. 12 and there is no apparent reason why some provision cannot be made, such as we ordered in the *Duteau* case, to protect those rights. For example, the defendant's trial could be transferred to a jury session in Suffolk County, or Suffolk County jurors could be transported to the northern trial session in Cambridge.[7]

---

[7] We do not suggest that a defendant has a right to a trial by a jury drawn only from the community wherein the crime allegedly was commit-

The group which the defendant claims to be underrepresented in this case, nonwhites, is a group characterized by race and race is a protected classification under art. 1 of the Massachusetts Declaration of Rights, as amended by art. 106 of the Amendments. See *Commonwealth* v. *Aponte*, 391 Mass. 494, 507 (1984) (groups which art. 12 protects are those set out in art. 1). Just because the defendant further defines the group as nonwhites of Suffolk County does not transform the classification into an unprotected geographical group. See *Duteau, supra* at 329-330. In any case, the geographic distinction is not pertinent here because the essence of the defendant's argument is racial exclusion.

The defendant has made out a claim for violation of his art. 12 rights. The racial group, nonwhites, makes up a constitutionally significant, large proportion of the population of the county from which jurors would have been drawn but for systematic changes made for the sake of administrative convenience. No matter what statistical gloss is applied, the defendant, a black, will be less likely to have black and minority jurors consider his fate.

The order of the District Court denying the defendant's request for a change of venue is vacated. The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

LYNCH, J. (dissenting). The defendant has not established a violation of art. 12 of the Massachusetts Declaration of Rights. The court concludes that, since the population of Middlesex County from which the jurors will be drawn is not similar to that of Suffolk County and since this dissimilarity

ted. Rather, what is important is that the jury which actually consider the case must be drawn from a representative fair cross section of that community. Thus, in this case, if the population of Middlesex County were racially similar to that of Suffolk County, art. 12 might have been satisfied.

occurs as a result of administrative changes promulgated by the District Court Department, the exclusion of the defendant's particular group or classes is systematic for purposes of the Sixth Amendment to the United States Constitution and art. 12. I do not agree.

To establish such a violation, the defendant must show not only that his jury would not be drawn from a fair cross section of the community, but also that a distinct group in the community was systematically excluded from the venire. See *Commonwealth* v. *Bastarche*, 382 Mass. 86, 96-97 (1980); *Commonwealth* v. *Williams*, 364 Mass. 145, 149 (1973). Even if we assume that the defendant can meet the "distinct group" test where his jury have yet to be selected, he has failed to demonstrate that any underrepresentation of blacks in the Middlesex County venire is the result of a systematic exclusion. Here the substitution of the Middlesex County jurors for Suffolk County jurors was brought about by the closing of the Chelsea court facility, which made desirable the transferring of its judicial operations to Cambridge. The judge made uncontested findings that using the Middlesex County venire would be more convenient for potential jurors, would permit the trial to occur in the vicinity of where the crimes occurred, and would be more convenient to administer. Any underrepresentation of blacks in the Middlesex County venire arises not from a systematic exclusion, but rather from the requirements of the District Court Department and its administration.

Under the court's view any change in the geographical area from which jurors are selected and which brings about significant demographic changes causes an unconstitutional systematic exclusion of the group whose demographics have been reduced. Such a formulaic application of the systematic exclusion requirement has previously never been understood to be what art. 12 and the Sixth Amendment require. I agree that discriminatory intent is not the bellwether of systematic exclusions, but for such a challenge to succeed more is required than simply demonstrating that there has been a

change in the ethnic composition of the area from which jurors are selected.

Furthermore, the principal underpinning of the court's opinion rests on the demographic distinctions between Suffolk County and Middlesex County. Demographic distinctions do exist between Suffolk County and Middlesex County.[1] In 1990, Suffolk County had a total population of 663,906 persons, of which 149,165 (twenty-two per cent) were black, and 102,531 (fifteen per cent) were other minorities. Comparatively, Middlesex County had a total population of 1,398,468 persons, of which 40,236 (three per cent) were black, and 99,330 (seven per cent) were other minorities.

A recent study has demonstrated, however, that these population differences do not always translate into similar differences in jury composition. Equal Justice: Eliminating the Barriers, Commission to Study Racial and Ethnic Bias in the Courts (Sept. 1994). For example, the commission reported that, in 1990, eighty per cent of those responding to juror summonses in Suffolk County were white, thirteen per cent were black or Hispanic, and one per cent were Asian. However, the 1990 census data indicated that Suffolk County's population was sixty-six per cent white, twenty-two and one-half per cent black, eleven per cent Hispanic, and five per cent Asian. The same comparison was performed on the prospective jurors in the Worcester County jury pool; however that comparison revealed no significant distinctions for the same classifications (i.e., less than one percentage point disparity). The commission attributed this disparity to the fact that Suffolk County has the highest rate of undeliverable summonses and a high nonresponse rate. In the view of the

---

[1]Data utilized by both the trial court and the parties is from the 1990 Federal census of population and housing study conducted by the Massachusetts Institute for Social and Economic Research of the University of Massachusetts at Amherst. This study classifies persons into five categories of race: (1) whites; (2) blacks; (3) American Indians, Eskimos, and Aleuts; (4) Asians and Pacific Islanders, and (5) all other races.

commission these factors lead to, and compounded, the lack of minority representation in Suffolk County's jury pool.

I am not persuaded, therefore, that county demographics are a reliable indicator of venire composition. Because it is unclear whether the demographic distinctions between Suffolk County and Middlesex County ultimately will result in significantly different jury venires from which juries will be drawn, I conclude that the defendant has failed to demonstrate that his art. 12 rights will be violated if he is tried before a jury drawn from Middlesex County's venire.[2]

In addition, it should be understood that the court's opinion is based on the premise that Suffolk County is the only relevant "community" for fair cross section analysis. The court opines that, if the defendant is tried in Middlesex County, he will lose the opportunity to have a jury pool reflecting the diversity of Suffolk County hear his case, and, therefore, concludes that his right to be tried by jurors representing a fair cross section of the community will therefore be violated. *Ante* at 297. Neither this court nor the Supreme Court has ever defined the term "community" for fair cross section purposes, but both legislative enactment and prior opinions of this court stand for the proposition that "community" is not synonymous with "county." This is especially understandable when one considers that, more than anything else, county boundaries are located where they are because of historical accident. The Legislature has provided that it is permissible to bring the defendant to trial in either Suffolk County or any adjoining county. G. L. c. 218, § 27A (*b*), as appearing in St. 1992, c. 133, § 557. This legislative enactment operates not only to determine where the defendant's trial can be held, but also to define the relevant community

---

[2] I note, however, that my view would not preclude a defendant from challenging venue transfers if the defendant indeed can demonstrate that the venire in the transfer venue will not be a reasonable surrogate venire because of its significantly different demographic profile than the venire in the original venue. To obviate future constitutional challenges I believe that the preferable approach would be for the motion judge to take into account demographic differences when ruling on change of venue requests.

from which a fair cross section of jurors must be drawn to meet impartial jury requirements. "A legislative enactment carries with it a presumption of constitutionality, and the challenging party must demonstrate beyond a reasonable doubt that there are no 'conceivable grounds' which could support its validity." *Leibovich* v. *Antonellis*, 410 Mass. 568, 576 (1991). See *Hallett* v. *Wrentham*, 398 Mass. 550, 557 (1986). Here the defendant has made no such showing. Furthermore, this court has consistently refused to rely on county boundaries for the purposes of determining where a trial must occur to be in the vicinity of the crime. See *Commonwealth* v. *Brogan*, 415 Mass. 169, 170, 174 (1993) (venue proper in Middlesex County even though alleged events occurred in other counties); *Commonwealth* v. *Duteau*, 384 Mass. 321, 326-327 (1981) (neither State nor Federal Constitutions limits Legislature's power to alter boundaries of grand jury jurisdictions); *Opinion of the Justices*, 372 Mass. 883, 898 (1977) (bill empowering Chief Justice of this court "to transfer or authorize the transfer of cases from one county to an adjoining county would not contravene art. 13").

For the foregoing reasons, I respectfully dissent.