COMMONWEALTH vs. DAGOBERTO SANCHEZ.

No. 08-P-1441.

Suffolk. June 8, 2010. - April 1, 2011.

Present: DUFFLY, BROWN, & VUONO, JJ.[1]

*Practice, Criminal,* Challenge to jurors, Instructions to jury. *Self-Defense. Defense of Others.*

At a murder trial in which the defendant alleged that the prosecutor used peremptory challenges to exclude certain prospective jurors based solely on race, the record supported the judge's finding that no pattern of discrimination had been established. [190-194] BROWN, J., concurring.

At a murder trial, no prejudicial error arose from the judge's instructions to the jury, in which he instructed on self-defense, defense of another, and the original aggressor rule but declined to inform the jury that the original aggressor rule was inapplicable to the defense of another, where the charge, as a whole, tracked the model jury instructions and correctly conveyed the elements of the defense, including the duty to retreat; and where the charge could not have been understood to mean that the defendant could not rely on the defense of another if he were found to be the original aggressor. [194-196] BROWN, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on August 5, 2005.

The cases were tried before *Thomas E. Connolly,* J.

*Ruth Greenberg* for the defendant.

*Lynn D. Brennan,* Assistant District Attorney, for the Commonwealth.

VUONO, J. A Superior Court jury convicted the defendant of murder in the second degree and unlawful possession of a firearm. At trial, the defendant admitted that he shot the victim, Jose Portillo, during a street confrontation. He claimed, however, that he acted in self-defense and in defense of his aunt, who had

---

[1] Justice Duffly participated in the deliberation on this case while an Associate Justice of this court, prior to her appointment as an Associate Justice of the Supreme Judicial Court.

intervened in the fight to protect him. The defendant appeals his convictions on the grounds that the Commonwealth's peremptory challenges during jury empanelment were used improperly and that the judge's instructions on defense of another were inadequate. We affirm.

*Background.* We briefly summarize the facts as the jury could have found them.[2] Around seven o'clock in the evening on May 21, 2005, the defendant and his aunt, Theresa Cordero, were driven home from a family party by Enrique Calderon. As they approached the defendant's neighborhood, they saw Portillo standing in the middle of the street, holding an aluminum baseball bat. Portillo had been involved in a physical altercation with two or three other men.[3] Upon arriving at the scene, the defendant exchanged words with Portillo and the others. The defendant then left the car, went into his house, and returned a few moments later, at which time he brandished a gun and told Portillo to leave.

Portillo did not leave. Instead, he approached the defendant while "wielding" the bat and yelling, "I'll get you," and "I'm not scared." Cordero, who by this point was out of the car, stepped between the defendant and Portillo and urged the defendant to leave. Portillo continued to swing the bat and walked toward Cordero and the defendant. Then, with the bat raised as if he was about to take a swing, Portillo stepped forward and stated, "I'm going to kill you." Believing that Portillo was about to hit her with the bat, Cordero moved out of the way. At about the same time, the defendant yelled, "Watch out," and shot Portillo twice, once in the chest and once in the abdomen. Portillo died as a result of his wounds one day later.

*Discussion.* 1. *Peremptory challenges.* Jury selection proceeded over two days. By the second day, the Commonwealth had exercised eleven peremptory challenges to remove eight white jurors, one forty-one year old man described by the parties as Hispanic, and two males described as African-American,

---

[2]The testimony of the witnesses differed slightly regarding the sequence of events. Because the discrepancies are not material to our discussion, we will not address them.

[3]There was no evidence that the defendant was part of the earlier confrontation involving Portillo.

both of whom were in their twenties.[4] In addition, ten jurors, five of whom were African-American (three women and two men),[5] had been seated. When the Commonwealth exercised its twelfth peremptory challenge to remove an eighteen year old African-American male (juror no. 261), defense counsel objected, contending that a pattern of challenges directed at "African American . . . young males" had been established. See *Commonwealth* v. *Soares*, 377 Mass. 461, 488-490, cert. denied, 444 U.S. 881 (1979). After some discussion, the judge overruled the objection,[6] explicitly finding that a prima facie showing of impropriety had not been made. As a result, the prosecutor was not required to justify the challenge.[7]

"Article 12 of the Declaration of Rights of the Massachusetts Constitution and the equal protection clause of the Federal Constitution prohibit the use of peremptory challenges to exclude prospective jurors on the basis of race." *Commonwealth* v. *Douglas*, 75 Mass. App. Ct. 643, 648 (2009), citing *Commonwealth* v. *Harris*, 409 Mass. 461, 464 (1991). The defendant claims that the prosecutor's use of peremptory challenges to exclude juror no. 261 and other "young men of color" from the jury violated the State and Federal Constitutions and, therefore, that the judge's conclusion that the defendant had not met his burden of establishing a prima facie case of improper challenges was erroneous.[8]

---

[4]The parties appear to be in agreement as to the background of the challenged jurors.

[5]The record does not disclose the ages of the women jurors. Regarding the two men, one was thirty-four and the other was fifty-one years old.

[6]Initially, the judge responded to trial counsel's objection by stating: "[F]or purposes of this particular juror, alone, I will find that there is a pattern of challenging black young men." The judge then asked the prosecutor to explain his reasons for challenging juror no. 261. The prosecutor inquired whether the judge was making an actual finding as to whether a prima facie showing of impropriety had been made, and asserted that he was not required to provide a justification until the judge did so. The judge agreed with the prosecutor's analysis of the procedure to be followed and ultimately found that a pattern of discrimination had not been shown.

[7]Although the judge did not require the prosecutor to disclose his reasons for challenging the juror, the judge supplied his own answer to the question when he observed that juror no. 261's "youth and the fact that he's a full time college student could be a problem."

[8]The defendant also raises an equal protection claim on behalf of the challenged jurors. See *Powers* v. *Ohio*, 499 U.S. 400, 411 (1991). As our analysis

"Peremptory challenges are presumed to be proper, but that presumption may be rebutted on a showing that '(1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership' in that group." *Commonwealth* v. *Maldonado,* 439 Mass. 460, 463 (2003), quoting from *Commonwealth* v. *Garrey,* 436 Mass. 422, 428 (2002). If the judge finds that a prima facie showing of an improper use of peremptory challenges has been made, "the burden shifts to the party exercising the challenge to provide a 'group-neutral' explanation for it." *Commonwealth* v. *Maldonado, supra.* Because "[a] trial judge is in the best position to decide if a peremptory challenge appears improper and requires an explanation by the party exercising it[,] . . . 'we do not substitute our judgment . . . for his if there is support for it on the record.' " *Commonwealth* v. *LeClair,* 429 Mass. 313, 321 (1999), quoting from *Commonwealth* v. *Colon,* 408 Mass. 419, 440 (1990).

In this case, the judge determined that the presumption of propriety had not been rebutted. He found it unlikely, in light of the fact that five other African-Americans had been seated, that the Commonwealth's challenges had been based solely on race. He also found that, to the extent the defendant's objection was based on the ages of the challenged jurors, it was not valid because age is not a suspect classification under *Soares,* 377 Mass. at 489. The judge also rejected the defendant's argument that "persons of color" constitute a discrete group under *Soares, supra.* Therefore, he refused to consider the prosecutor's challenge of the juror believed to be Hispanic in determining whether the defendant had established a pattern of improper exclusion based on race.

The record supports the judge's finding that no pattern of discrimination had been established. First, the fact that other members — here, five — of an allegedly targeted group were seated is an appropriate factor to consider in determining whether the presumption of propriety had been rebutted. See and compare *Commonwealth* v. *Walker,* 69 Mass. App. Ct. 137, 142 (2004).

under either the State or Federal Constitution is the same, we focus our attention on art. 12. See *Commonwealth* v. *Benoit,* 452 Mass. 212, 218 n.6 (2008) ("Regardless of the perspective from which the problem is viewed, the result appears to be the same").

Second, the judge correctly ruled that age is not a protected class under either the Declaration of Rights, see *Commonwealth v. Samuel*, 398 Mass. 93, 95 (1986) ("There is no constitutional basis for challenging the exclusion of young persons"), or the United States Constitution. See *United States* v. *Cresta*, 825 F.2d 538, 545 (1st Cir. 1987) (holding that young adults do not constitute a "cognizable group" for the purpose of an equal protection challenge to the composition of a petit jury).

Third, the judge did not err in rejecting the defendant's assertion that "persons of color" includes both African-American and Hispanic jurors and constitutes a discrete aggregate group under *Soares, supra*. Although "[t]here is no dispute that Hispanic persons [like African-Americans] are members of a racial or ethnic group protected under art. 1 of the Declaration of Rights," *Commonwealth* v. *Rodriguez*, 457 Mass. 461, 467 n.15 (2010), we are not aware of any authority requiring a trial judge to combine challenges to members of discrete racial or ethnic groups into one "catch all" category.[9] Cf. *Gray* v. *Brady*, 592 F.3d 296, 306 (1st Cir.), cert. denied, 130 S. Ct. 3478 (2010) (rejecting claim that "minorities" constitute a cognizable group under *Batson* v. *Kentucky*, 476 U.S. 79 [1976], and expressing "serious" doubt whether classes such as "minorities" or "non-whites" possess "the definable quality, common thread of attitudes or experiences, or community of interests essential to recognition as a 'group' ").

The defendant further argues that the procedure set forth in *Soares*, 377 Mass. at 489-490, and its progeny fails to protect against discrimination in the jury selection process and, therefore, the use of peremptory challenges should be abolished. As the defendant acknowledges, it is beyond our authority "to alter, overrule or decline to follow the holding of cases the

[9]The Supreme Judicial Court's decision in *Smith* v. *Commonwealth*, 420 Mass. 291, 298 (1995), on which the defendant relies, is not to the contrary. There, in the context of a challenge to the racial makeup of the venire, the court held that " 'nonwhites' . . . is a group characterized by race and race is a protected classification under art. 1 of the Massachusetts Declaration of Rights." *Ibid.* However, a close reading of *Smith* reveals that the race-based category "nonwhites" was not inclusive of Hispanic jurors. *Id.* at 293 n.4 (noting that the data it relied upon defined "minorities" as "the total Hispanic population *plus* the total nonwhite population" [emphasis added]).

Supreme Judicial Court has decided." *Commonwealth* v. *Dube*, 59 Mass. App. Ct. 476, 485 (2003) (citing cases).[10]

2. *Jury instructions.* At the conclusion of the trial, the judge instructed the jury on both self-defense and defense of another. Upon the request of the Commonwealth, the judge also agreed to instruct the jury on the original aggressor rule, which provides that "self-defense . . . cannot be claimed by a [defendant] who provokes or initiates an assault." *Commonwealth* v. *Espada*, 450 Mass. 687, 693 (2008), quoting from *Commonwealth* v. *Maguire*, 375 Mass. 768, 772 (1978). The defendant objected and requested that the judge either refrain from giving an original aggressor instruction or explicitly inform the jury that the original aggressor rule is inapplicable to the defense of another. Eventually, the judge gave the instruction without any specific restrictions.

The defendant claims that because the judge refused to instruct the jury exactly as he had requested, he was deprived of his due process right to establish a defense. Because the issue was properly preserved, we review for prejudicial error. *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

Our cases have not specifically addressed whether the original aggressor rule applies to defense of another.[11] Assuming without deciding that the original aggressor rule is wholly or partially inapplicable to the defense of another as that defense was as-

---

[10]For cases noting concerns about the use of peremptory challenges, see *Commonwealth* v. *Rodriguez*, 457 Mass. at 488 (Marshall, C.J., concurring); *Commonwealth* v. *Maldonado*, 439 Mass. at 468 (Marshall, C.J., concurring); *Commonwealth* v. *Calderon*, 431 Mass. 21, 29 (2000) (Lynch, J., dissenting). See generally Brown, McGuire, & Winters, The Peremptory Challenge as a Manipulative Device in Criminal Trials: Traditional Use or Abuse?, 14 New Eng. L. Rev. 192 (1978). But see *Commonwealth* v. *Benoit*, 452 Mass. 212, 235 n.1 (2008) (Cowin, J., dissenting).

[11]Our review of the law from other jurisdictions does not reveal a uniform approach to the issue. Many States (in contrast to ours) address the issue by statute. See, e.g., Colo. Rev. Stat. § 18-1-704 (2010); Conn. Gen. Stat. § 53a-19 (2009); Ga. Code Ann. § 16-3-21 (2007); Kan. Stat. Ann. § 21-3214(3) (2007). Some courts, as a matter of statutory construction, have suggested that a defendant's aggressor status may properly deprive him entirely of the right to rely on defense of another. See *State* v. *Silveira*, 198 Conn. 454, 470 (1986). At least one other jurisdiction holds that an otherwise justifiable application of force in defense of another, when rendered by an original aggressor, constitutes the imperfect defense of another and reduces the killing to voluntary manslaughter. See *State* v. *Johnson*, 182 N.C. App. 63, 70 (2007), citing *State* v. *Perry*, 338 N.C. 457, 466 (1994).

serted here, the error was not prejudicial.[12] "The judge is not required to grant a particular instruction so long as the charge, as a whole, adequately covers the issue." *Commonwealth* v. *Cruz,* 445 Mass. 589, 597 (2005), quoting from *Commonwealth* v. *Daye,* 411 Mass. 719, 739 (1992). The final charge[13] tracked the model jury instructions and correctly conveyed the elements of the defense, including the duty to retreat. Moreover, at no time did the judge state that if the jury were to find that the defendant was the original aggressor in the fight with Portillo he could not rely on the defense of another (Cordero) to justify his conduct.[14] Because the instructions, as given, could not have been understood as the defendant suggests, the failure to give the requested instruction "did not influence the jury, or had but very slight

[12]Although we do not decide the issue, we note that the answer is not clear. There is some merit to the defendant's argument that it would be difficult to reconcile a rule that would deter persons — even original aggressors — from forcefully intervening on behalf of an apparently blameless third person, with a policy rationale based on "the social desirability of encouraging people to go to the aid of third parties who are in danger of harm as a result of the unlawful actions of others." *Commonwealth* v. *Monico,* 373 Mass. 298, 303 (1999) (discussing *Commonwealth* v. *Martin,* 369 Mass. 640, 649 [1976], which announced the modern defense of another rule). At the same time, we do not find it obvious that an actor's provocation or exacerbation of a conflict becomes irrelevant once an innocent third party enters the equation. A person who initiates or provokes a conflict is not in the same position as the archetypical "good Samaritan" envisioned by the Supreme Judicial Court when it first enunciated the defense in *Martin, supra.*

[13]The jury received multiple versions of the instructions over two days. The initial instructions contained a number of errors and were stricken entirely. The judge then reinstructed the jury in accordance with the Model Jury Instructions on Homicide (1999).

[14]During his charge to the jury, the judge explained that he would "talk a little bit about self-defense and then *after that* we'll talk about the defense of another" (emphasis supplied). While defining the elements of self-defense, the judge stated that "[a]n original aggressor has no right to self-defense unless he withdraws from the conflict in good faith and announces his intention of abandoning the fight." After concluding his explanation of self-defense, the judge turned to the defense of another. The subject was introduced as follows: "Now, ladies and gentlemen, there is another aspect of self defense. It's called the defense of another." The judge then discussed the elements of defense of another and never once mentioned the original aggressor rule. Thereafter, during their deliberations, the jury asked the judge for further instructions on defense of another on two occasions. The judge responded to these questions by repeating his earlier (correct) instruction, which, again, did not mention the original aggressor rule.

effect." *Commonwealth* v. *Flebotte*, 417 Mass. at 353, quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

*Judgments affirmed.*

BROWN, J. (concurring). Apart from the troubling fact that a manslaughter instruction was neither given nor requested, I am of opinion that this case can be affirmed simply on the basis of the defendant's status as the initial aggressive user of deadly force — a handgun.[1] Neither the defense of another nor the failure to retreat, in my view, enters into the calculus.

As an additional aside, I think the judge's handling of the peremptory challenge issue would have been more efficacious if he had followed the teachings of *Commonwealth* v. *Futch*, 38 Mass. App. Ct. 174, 177-178 (1995), and cases cited therein.

---

[1] The teaching point here is "sticks and stones" may break bones, but a loaded handgun will very likely kill a person.