LYNCH, Circuit Judge.
This habeas corpus petition comes to us again following our previous opinion remanding to the federal district court. Sanchez v. Roden (Sanchez I), 753 F.3d 279, 309 (1st Cir.2014). The petition contests the state court’s conclusion that the state prosecutor did not violate the Fourteenth Amendment in his exercise of a peremptory challenge during jury selection for Dagoberto Sanchez’s state trial on charges of second-degree murder and unlawful possession of a firearm. Sanchez contends that the challenge was impermis-sibly based on race.
Previously, this court found that, contrary to the state court’s ruling, Sanchez had established a prima facie case of racial discrimination under step one of the framework established in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We remanded the case to the federal district court for an eviden-tiary hearing as to steps two and three of Batson. After that hearing, which included testimony from the prosecutor who exercised the challenge, the district court ruled against Sanchez on the final step of Batson and denied his petition. Sanchez v. Roden, No. 12-10931, 2015 WL 461917 (D.Mass. Feb. 4, 2015). We affirm.
I.'
We recite only the facts necessary to these habeas proceedings, as our previous opinion in this case describes Sanchez’s conviction and direct appeal in detail. In 2005, Sanchez was indicted for second-degree murder and unlawful possession of a firearm. During jury selection for his trial, state prosecutor Mark Lee exercised peremptory challenges, as relevant here, *87 to strike three black men age 25 or under (Jurors 201, 227, and 261).[1] After striking Jurors 201 and 227 but before striking Juror 261, a 19-year-old black male college student, Prosecutor Lee seated Juror 243, a 21-year-old white male college student born in Russia. When Lee moved to strike Juror 261, Sanchez’s defense counsel objected, arguing that Lee was striking young black potential jurors on the basis of a combination of their race, youth, and gender. The judge ruled that Sanchez had not made a prima facie case of discrimination. Ultimately, the impaneled jury of sixteen included three black women and two black men. The jury convicted Sanchez, and he was sentenced to life imprisonment for murder, with a concurrent two-year sentence on the firearm charge.
On appeal to the Massachusetts Appeals Court, Sanchez contended, among other things, that Lee had improperly exercised peremptory challenges against young “men of color,” but the state appeals court rejected that contention, Commonwealth v. Sanchez, 79 Mass.App.Ct. 189, 944 N.E.2d 625, 628-29 (2011), and the Massachusetts Supreme Judicial Court denied further review, Commonwealth v. Sanchez, 460 Mass. 1106, 950 N.E.2d 438 (2011) (table decision). Sanchez subsequently petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. The district court, determining the state court’s application of federal law was reasonable, denied the petition. Sanchez v. Roden, No. 12-10931, 2013 WL 593960, at *6 (D.Mass. Feb. 14, 2013) (applying the Batson framework).
This court disagreed with the Massachusetts Appeals Court and with the district court’s finding. Sanchez I, 753 F.3d at 309. This court held that the state appeals court’s Batson analysis had unreasonably focused on the overall racial composition of the impaneled jury, ignoring evidence of possible discrimination against the subset of young black men. Id. at 299-300. Reviewing the record de novo, the panel found that a prima facie case of racial discrimination in the prosecution’s peremptory challenge against Juror 261 had been established under Batson. Noting that Lee had not yet provided a reason for the challenge, id. at 307, the panel remanded the case to the federal district court to complete the Batson inquiry, id. at 308 (instructing the district court to follow the guidance set forth in People v. Johnson, 38 Cal.4th 1096, 45 Cal.Rptr.3d 1, 136 P.3d 804, 808 (2006)).
On remand, the district court held an evidentiary hearing on September 8, 2014, in which Lee alone testified and was subject to cross-examination by petitioner’s counsel. Lee testified that he challenged Juror 261 — the 19-year-old black male— and several other jurors, including Jurors 201, 227, and 229, a white male college student, because of their youth. He stated that his general practice is to challenge young jurors, such that when he reviews jury questionnaires at the beginning of jury selection, “one of the very first things” he looks at is the age of prospective jurors, which he circles in red.
Lee testified that the dynamics of jury selection also played a “significant role” in exercising challenges. He stated, “I’m always monitoring how many peremptory challenges I have left versus how many peremptory challenges defense counsel has left and also in consideration of what I understand to be upcoming based upon the questionnaires.” He explained, “the *88 more challenges the defense has, the more flexible they can be about exercising those challenges, and, therefore, I have to be careful about the number of challenges that I’m exercising under those circumstances.” Lee testified that during individual questioning of the prospective jurors, he flipped through the jury questionnaires and a chart that he kept to track which jurors had been struck by which party. On cross-examination, he maintained that he does this “in every trial all the time” and is “constantly looking through the questionnaires.” He stated specifically that his low number of remaining challenges and “the number of jurors that still needed to be selected” in combination also motivated his choices regarding striking Juror 261 and keeping Juror 243.
When asked to explain why he did not challenge Juror 243 — the 21-year-old white male college student from Russia— Lee testified that he was “running out of challenges.” He explained that when he has few challenges remaining, he reviews the jury “questionnaires to determine how many of the remaining challenges [he is] likely to have to use,” and he then accepts young jurors based on indications that “might make them not fit their chronological age.” In the case of Juror 243, Lee stated, “I took him, despite not wanting to take him,” as “he was born in Moscow ... [and] he came here on his own to begin his own education, and so I thought if I had to take a young juror, that would be somebody who might be a better candidate than most.” On cross-examination, Lee conceded that there was no way to know whether Juror 243 had grown up abroad, but he reiterated that he was looking for “somebody who has some level of maturity and life experiences,” and he thought Juror 243 seemed “a little bit older than someone else in terms of life experience.”
During cross-examination, Lee stated that the only “outward” difference between Juror 243 and Juror 261 was that one was white and the other black. The district judge then asked, “Well, one was 19 and one was 21, right, do I have that right?” Both Sanchez’s counsel and Lee responded affirmatively. The following colloquy between Sanchez’s counsel and Lee ensued:
Lee: Yes, [Juror 243] was two years older.
Sanchez’s Counsel: But you challenged people who were older than 21 for age, did you not?
Lee: Yes. There is a distinction, but, as I said, my inclination would have been to strike [Juror 243] under all things being equal.
Sanchez’s Counsel: So the two years was not the defining difference for you?
Lee: At that stage of the game, every possible distinction was relevant.
Subsequent questioning turned to the importance of trial dynamics to Lee’s choices.
In a February 4, 2015, order, the district court denied Sanchez’s habeas petition. In reaching its decision, the district court considered Lee’s testimony, oral argument by both parties, the Commonwealth’s Supplemental Answer to the 2012 habeas petition, which included jury questionnaires, as well as the parties’ opposing memoranda of law. The court specifically found Lee’s demean- or “professional and credible throughout.” At Batson step two, the court concluded that Lee’s testimony that he struck Juror 261 because of his age was facially valid and race-neutral. At Batson step three, the court focused on Lee’s testimony at the evidentiary hearing. Recognizing the practice of striking potential jurors because of their youth as an accepted trial strategy, the court credited Lee’s explanation of his decision to strike Juror 261 based on his age. As to the alleged inconsistency in Lee’s application of that prac *89 tice, the court credited two additional points: first, that Lee drew distinctions between young people that led him to keep some jurors but strike others; and second, that considerations of remaining challenges for either party, the number of jury seats to fill, and the pool of potential jurors motivated Lee to depart from his practice regarding age. After an extensive review of the evidence, the district court concluded that Sanchez had not proven Lee exercised a peremptory challenge to Juror 261 on the basis of race. This appeal followed.
II.
 Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), sets forth the three-step framework courts use to assess claims of racial discrimination in jury selection. When raising an objection to a prosecutor’s use of a peremptory challenge, a criminal defendant must first make a prima facie case of racial discrimination. Snyder v. Louisiana, 552 U.S. 472, 476, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). If such a showing is made,.then “the prosecution must offer a race-neutral basis for striking the juror in question.” Id. at 477, 128 S.Ct. 1203 (quoting Miller-El v. Dretke, 545 U.S. 231, 277, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (Thomas, J„ dissenting)). Finally, based on “all of the circumstances,” the court must determine whether the defendant has carried his ultimate burden of showing purposeful racial discrimination. Id. at 478, 125 S.Ct. 2317.
Since this court previously determined that Sanchez had made a prima facie case, this appeal concerns only the latter two steps of the Batson inquiry as applied to Juror 261.[2] Typically, we may not on habeas review order an evidentiary hearing under 28 U.S.C. § 2254(e)(2), barring statutorily enumerated exceptions not applicable here., See Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1398-1400, 179 L.Ed.2d 557 (2011). However, we note, as we did in our previous decision, that our remand to the federal district court for an evidentiary hearing on an issue of federal law about which “the state courts have already had their say” was permissible in light of the fact that the paucity of the record was owing to the state court’s unreasonable application of Batson’s first step. Sanchez I, 753 F.3d at 308; see Madison v. Comm’r, Ala. Dep’t of Corrections, 761 F.3d 1240, 1249-50 (11th Cir.2014); Paulino v. Harrison, 542 F.3d 692, 698 & n. 5 (9th Cir.2008); cf. Smith v. Cain, 708 F.3d 628, 635 (5th Cir.2013) (finding Batson evidentiary hearing ordered by district court to satisfy § 2254(e)(2) where criminal defendant raised Batson objection “but the state court failed to provide him the opportunity to develop the factual basis of his claim through its misapplication of the Batson standard”). Neither party has objected to this procedure.
 We review the district court’s decision to deny a petition for habeas corpus de novo, Sanchez I, 753 F.3d at 293, and in the.Batson context, we apply clear error review to the fact-finding court’s ruling on discriminatory intent, Snyder, 552 U.S. at 477, 128 S.Ct. 1203; United States v. Monell, 801 F.3d 34, 43 (1st Cir.2015). Where the federal district court conducted an evidentiary hearing and took testimony from the prosecutor who exercised the challenge *90 at issue, we recognize that “determinations of credibility and demeanor lie ‘peculiarly within [its] province.’ ” Snyder, 552 U.S. at 477, 128 S.Ct. 1203 (quoting Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). We must uphold the district court’s ruling unless “we are left with the definite and firm conviction that a mistake has been committed.” United States v. Mensah, 737 F.3d 789, 796-97 (1st Cir.2013) (quoting United States v. Gonzalez-Melendez, 594 F.3d 28, 35 (1st Cir.2010)); see also Madison, 761 F.3d at 1245; Paulino, 542 F.3d at 698.
A. Batson Step Two
When called upon to provide a race-neutral basis for his actions, Lee explained that he challenged Juror 261 because of his “age.” Age is not a protected category under Batson. See United States v. Cresta, 825 F.2d 538, 545 (1st Cir.1987); see also United States v. Helmstetter, 479 F.3d 750, 754 (10th Cir.2007) (collecting agreeing sister circuits).[3]
Bearing in mind that at step two, the prosecution’s reason does not have to be “persuasive, or even plausible,” Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam), we easily affirm the district court’s finding that Lee’s explanation — that he struck Juror 261 because of his age — is race-neutral, United States v. Bowles, 751 F.3d 35, 38 (1st Cir.2014), and satisfies the state’s burden at step two to articulate a nondiscriminatory reason for the strike, Purkett, 514 U.S. at 769, 115 S.Ct. 1769.
B. Batson Step Three
The critical issue at this step “is the persuasiveness of the prosecutor’s justification for his peremptory strike.” Miller-El v. Cockrell, 537 U.S. 322, 338-39, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). The burden of proof lies with Sanchez to show that Lee acted with discriminatory purpose. Purkett, 514 U.S. at 768, 115 S.Ct. 1769. Since this step turns on credibility determinations and a fact-driven evaluation of all the relevant circumstances that the district court is best suited to make, Cockrell, 537 U.S. at 339, 123 S.Ct. 1029, we review the court’s ruling through “a highly deferential glass,” United States v. Lara, 181 F.3d 183, 194 (1st Cir.1999). We affirm the district court’s finding that Sanchez has not established that Lee’s challenge to Juror 261 was race-based.
Sanchez argues, as he did before the district court, that Lee was not motivated to challenge Juror 261 because of his youth, since were youth a criterion, he would have struck a similarly situated juror, Juror 243 (the 21-year-old white male born in Russia).[4] Courts may consider “whether similarly situated jurors from outside the allegedly targeted group were permitted to serve.” United States v. Aranjo, 603 F.3d 112, 115 (1st Cir.2010) *91 (quoting Aspen v. Bissonnette, 480 F.3d 571, 577 (1st Cir.2007)); see also Dretke, 545 U.S. at 241, 125 S.Ct. 2317. Lee testified that although he was inclined to challenge Juror 243, he decided instead not to because he was “running out of challenges,” and Juror 243 appeared more mature than his “chronological age.” Lee testified:
I took [Juror 243], despite not wanting to take him, but I was — there are a number of young jurors who I will take based upon what I consider to be indications on their questionnaire that might make them not fit their chronological age, which is to say that he was 21 years old, but I noted he was born in Moscow, I noted that he came here on his own to begin his own education, and so I thought if I had to take a young juror, that would be somebody who might be a better candidate than most.
Regarding Juror 261, in contrast, Lee testified that he “didn’t see anything else on [Juror 261’s] questionnaire that would give [him] reason to believe that he had a maturity level greater than that of an age 19-year-old person.”
Sanchez attempts to undercut the district court’s finding as to this explanation’s credibility. First, he points to Lee’s concession on cross-examination that he was aware jury members must be U.S. citizens as proof that Lee did not believe Juror 243 “came here on his own to begin his own education,” and so could not have perceived the juror to be more mature on that basis. Second, Sanchez argues that Lee could not have viewed being foreign-born as a sign of maturity because, had this been his view, he would not have struck Juror 201 (a 25-year-old male from Trinidad). Third, he argues that the district court improperly supplied Lee with the idea that the difference in age between 19 and 21 was meaningful. None of the arguments have merit.
Sanchez’s first argument does not establish clear error. Even if Lee was ultimately mistaken in his assumptions about Juror 243’s biography, what matters is whether the explanation genuinely reflected [his] true motive. Aranjo, 603 F.3d at 116. The district court observed Lee testify, including subject to an extensive cross-examination, and concluded that it was plausible that Lee had seen Juror 243’s foreign origin as conferring greater maturity. The court’s rejection of Sanchez’s first argument is not clear error.
The second argument fares no better, and it misconstrues Lee’s testimony. Lee did testify that he generally sought to exclude young potential jurors, but he did not testify that he perceived being foreign-born as an absolute exception to his rule on youth. Lee stated that in the particular case of Juror 243, he was looking for indications that he was “a little bit older than someone else in terms of life experiences” because of the diminishing number of challenges remaining. Examining the dynamics of the jury selection process, the district court correctly noted that Lee “had substantially more flexibility when considering juror[ ] 201,” the Trinidadian, than when considering later jurors, as he had 12 out of 16 peremptory challenges remaining at the time. It was not clear error for the district court to credit the sincerity of Lee’s consideration of Juror 243’s foreign birth.
Sanchez’s third argument is qualitatively different. He argues that the district court improperly supplied Lee with a way to distinguish between Juror 243 and Juror 261. Sanchez points to a moment during cross-examination following a concession by Lee that both Jurors 243 and 261 were young college students and that their only “outward” ascertainable difference *92 was race. The district judge at that point interjected: “Well, one was 19 and one was 21, right, do I have that right?” After both Sanchez’s counsel and Lee responded affirmatively to the judge’s question, the following colloquy between Sanchez’s counsel and Lee occurred:
Sanchez’s Counsel: But you challenged people who were older than 21 for age, did you not?
Lee: Yes. There is a distinction, but, as I said, my inclination would have been to strike [Juror 243] under all things being equal.
Sanchez’s Counsel: So the two years was not the defining difference for you? Lee: At that stage of the game, every possible distinction was relevant.
Although the district court does not refer to this particular exchange, Sanchez relies on Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), to suggest that the trial judge improperly supplied Lee with the difference in age between the jurors as the reason for striking, id. at 252, 125 S.Ct. 2317.
This argument lacks merit for a number of reasons. As a matter of law, any reliance on Dretke is misplaced. Dretke involved a Batson challenge in which the appellate court justified a prosecutor’s strike based on a “rational basis” for his actions that the court supplied, without taking full account of the record. Id. The Court held that neither trial nor appellate courts may disregard the record and “imagine a reason” for a prosecutor’s actions. Id. That is not what happened here. Here, in concluding that Lee perceived a difference in maturity between Juror 243 and Juror 261, the district court recited ample record evidence, including Lee’s testimony from before the contested exchange. The district court’s conclusions do not rely on, or even mention, the disputed exchange. But even so, we note that the disputed statement, that “every possible distinction was relevant,” referring to the difference in the jurors’ chronological ages, was made in response to opposing counsel’s question and not that of the district judge. We simply do not have a case where after the fact the district court concocted an explanation from whole cloth without record support.[5] Given the highly deferential standard of review on questions of credibility, we have no trouble affirming the district court’s finding that Lee regarded Jurors 243 and 261 as different based on differences other than race.
Further, Lee’s choice to keep Juror 243 but strike Juror 261 is also supported by his testimony concerning the importance of strategically using and preserving strikes in light of the dynamics of jury selection. As the district court noted, consideration of the number of jurors to be seated and the number of remaining challenges of either party is valid. Mensah, 737 F.3d at 802 (noting as a valid concern a prosecutor’s cautiousness over a single remaining strike when faced with unknown upcoming jurors). Sanchez argues that Lee could not have so calculated the number of remaining challenges, unseated jurors, and characteristics of potential jurors. Lee explained his practice concerning these eal- *93 culations and on cross-examination maintained, “I do it in every trial all the time. I’m constantly looking through the questionnaires.” There is nothing improbable about a trial lawyer using such a practice. The district court’s crediting of this explanation was not clearly erroneous.
Sanchez’s remaining arguments do not convince us otherwise. Sanchez points to the fact that the prosecutor eliminated one-hundred percent of young black men from the venire. We have previously held that this is not alone sufficient to prove discrimination, especially where there are small numbers of potential jurors of the allegedly targeted group. See id. at 801 (cautioning against weighing heavily that prosecutor struck all Asian-Americans where only two were in venire); Caldwell v. Maloney, 159 F.3d 639, 656 (1st Cir.1998) (upholding peremptory strikes of all four potential jurors of one race). Sanchez also points to Lee’s failure to explain his use of a peremptory challenge during the original jury selection, but Lee was not required to provide such an explanation until one was requested of him. Sanchez I issued such a request, and Lee has now duly offered his explanation.
We acknowledge both the difficulties in making a Batson determination on a cold record many years following the original jury selection and also the importance of protecting the right of every juror to serve and of every defendant to have a trial free of the taint of racial discrimination. See Batson, 476 U.S. at 87, 106 S.Ct. 1712. But here the district court did not abuse its broad discretion as factfinder on matters of credibility in concluding that Sanchez has not proven that there was racial discrimination. That ends the matter.
III.
For the reasons stated, we affirm the denial of the habeas petition.

. The record does not clearly establish Juror 201’s race, but given indications in the state court proceedings that he was a "person of color,” we count him among the black jurors for the purposes of our Batson analysis.

. We previously held that Sanchez waived any objection to the prosecution’s challenges to other jurors by failing to raise them at trial, Sanchez I, 753 F.3d at 295 & n. 10, and Sanchez cannot revive such challenges in this appeal. We note, however, that challenges to other jurors nonetheless may be relevant to the issue of discriminatory intent, Dretke, 545 U.S. at 241, 125 S.Ct. 2317, and so we consider such evidence for that purpose.

. Disputing Lee's explanation, Sanchez contends that our opinion in Sanchez I conclusively determined that "age” did not motivate Lee in striking Juror 261. See Sanchez I, 753 F.3d at 306. That contention is meritless, and it misses the point and purpose of the remand. Whatever conclusions we drew about Lee’s motivations in our prior opinion reflected only the limited facts then available on the state court record, id. at 307. Our prior analysis pertained only to Batson step one and does not determine our current review of the latter Batson steps, based on the district court's findings, which are based on a different and augmented record.

. As to other young jurors, the record amply supports the district court's determination that Lee declined to strike Juror 255 because she was, at age 27, not "overly young,” and declined to strike Juror 293, a 26-year-old female, and Juror 333, a 23-year-old female, because he had only three and two challenges remaining, respectively.

. To be clear, a trial judge has discretion to make inquiries of witnesses as necessary to facilitate a full and fair hearing. See Fed.R.Evid. 614(b); United States v. Melendez-Rivas, 566 F.3d 41, 50 (1st Cir.2009). It is permissible in the normal course of a Batson hearing for a judge to ask clarifying questions and at times engage with witnesses directly. Indeed, the fact that the district judge here did so several times apart from the contested exchange further indicates that, seen in the context of a normal hearing, there was nothing prejudicial in the judge's question about the difference in age between Jurors 243 and 261.